## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WILDERNESS WORKSHOP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2021-cv-2108 |
| | ) | |
| U.S. DEPARTMENT OF AGRICULTURE, | ) | |
| an agency of the United States, | ) | |
| U.S. FOREST SERVICE, | ) | |
| an agency of the United States, | ) | |
| | ) | |
| Defendants | ) | |

## <u>RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT</u>

The Plaintiff, Wilderness Workshop, through counsel, hereby responds in opposition to the Defendants' Motion for Summary Judgment (ECF No. 19).  Plaintiff's Cross-Motion, filed concurrently with this Motion, proposes to resolve the search issue in a manner that obviates the need to resolve all claims at this time.  Because the burden is on the agency to sustain its Freedom of Information Act ("FOIA") decisions and actions, appropriate relief on either party's summary judgment motion includes orders directing a new search and directing disclosure of withheld records that lack justification in the agency's proffers. 5 U.S.C. §552(a)(4)(B).

## I.   FACTUAL BACKGROUND

### A.   September 24, 2020 FOIA Request ("FOIA Request").

On September 24, 2020, Wilderness Workshop submitted a written FOIA request that described the category of agency records related to a controversial private development proposal that sought road and utility access across the White River National Forest in Colorado. Ex. 1 (Environmental Impact Statement – Executive Summary)

> The Request sought copies of all agency records concerning, relating, or pertaining
> to the Berlaimont Estates LLC. request for expanded access to the Edwards

Overlook Parcel within the White River National Forest.[1] The scope of this Request includes all agency records that have not been produced in response to other Wilderness Workshop FOIA requests.

ECF No. 19-4 at 2.[2]  The Berlaimont Project involves a controversial request to expand and alter the access to a private parcel by granting use of National Forest Service land for expanded road and utility access to facilitate a commercial development proposal in Eagle County. Ex. 1 (Environmental Impact Statement Excerpt – Executive Summary). The Berlaimont Estates, LLC. request is based on the premise that "current maintenance level and condition of the existing Forest Service Roads (FSR) are not at the level desired by the Applicant [Berliamont Estates LLC] to meet the [private developer's] objectives." *Id*. at S-2.

Dozens of Defendants' agency personnel have been involved in the Forest Service decisionmaking process involving the National Environmental Policy Act, Endangered Species Act, and other state and federal laws. *See e.g. Id*. at 281 (Environmental Impact Statement – Preparers).  Hundreds of persons, including Berlaimont Estate's agents and attorneys, members of the public, elected officials, government staff, and others with interests in the White River National Forest similar to Plaintiff's, have contacted agency staff, contractors, and agency attorneys regarding the controversial proposal via formal comments and informal communications such as emails and phone calls. *Id*. at 282-293. An undetermined number of as-yet undisclosed agency records were created or obtained by Defendants in considering the proposed Berlaimont Project.

---

[1] For brevity, and consistent with agency use, this will be called the "Berlaimont Project."
[2] A different FOIA Request was erroneously filed with the Complaint. ECF No. 1-6.  The error has no effect on the pleadings or summary judgment filings, all which correctly reference the September 24, 2020 FOIA Request. ECF No. 19-4

Because the USDA's Office of General Counsel[3] ("OGC") and Under Secretary for Natural Resources and Environment[4] ("Undersecretary's Office") were excluded from previous FOIA searches, the FOIA Request highlighted the need to search these offices, among other USDA components, for responsive agency records. ECF. No 91-4 at 2,3.  The opening paragraph of the FOIA Request summarily described the "types of agency records sought" and specified that responsive records would likely be found "within the U.S. Department of Agriculture (including OGC, the U.S. Forest Service, and the Undersecretary's Office)." ECF No. 19-4 at 2. Subsequent descriptions in the FOIA Request confirmed that all levels of the USDA were likely to possess responsive records, and therefore must be searched.

> We request that the U.S. Department of Agriculture identify and produce all responsive records from any agency or office and conduct searches wherever such records may reasonably be expected to be found. Responsive records may be maintained in various levels of the agency's organizational structure, including OGC, the Undersecretary's Office, the U.S. Forest Service's Rocky Mountain Regional Office and the Office of the Chief of the U.S. Forest Service, and the White River National Forest and Districts within the White River National Forest.

*Id*. at 3.

The FOIA Request recognized that previously released records need not be produced again, and referenced previously settled FOIA litigation. *Id*. at 2, FN1.  The FOIA Request sought to include the most expansive description of the desired search to ensure the agency did not again unreasonably limit the personnel, locations, devices, or search terms that would need to

---

[3] The OGC provides an array of legal and non-legal services to the Forest Service, and often creates and obtains agency records when communicating directly with project proponents, such as Berlaimont Estates, LLC.

[4] The Undersecretary's Office operates to "supervise the Forest Service at the" USDA. *See*: fs.usda.gov/inside-fs/leadership/welcoming-jim-hubbard-our-new-under-secretary-nre (last visited 3/17/2022).  The Undersecretary's Office sometimes acts on behalf of the Forest Service. *Wild Va. v. United States Forest Serv.*, 2022 U.S. App. LEXIS 2313, at *15 (4th Cir. Jan. 25, 2022) (setting aside unlawful pipeline approval).

be included in a FOIA-compliant search for agency records created or obtained with regard to the Berlaimont Project. *Id*. at 2-3.

### B.     Segmented FOIA Processing of the September 24, 2020 FOIA Request

FOIA's 20-working day deadline expired on October 23, 2020, without a final determination on the FOIA Request as a whole.  ECF No. 13 ¶¶40-41 ("Defendants admit that they did not provide a determination on the FOIA request by October 14, 2020.").  Despite repeated requests, Defendants failed to provide "estimated dates for a determination on the FOIA request." *Id*. at ¶¶42-48.  "As of close of business on the day before [the Complaint was filed], WW has not received a final determination on the FOIA Request" or an "updated estimate for a final determination." ECF No. 1 at ¶48, *admitted* ECF No. 13 at ¶48.

The agency proffers describe a segmented approach to processing the FOIA Request and a limited search for responsive records did not match the scope of the FOIA Request. The search proffers are limited to declarations that identify only three persons within the USDA Office of General Counsel, and unnamed persons in Washington D.C. within unnamed USDA components whose records were searched. ECF Nos. 19-3 ¶¶8-11, 19-8 ¶¶8-11.  The proffers include no evidence regarding the scope of the search conducted by the Forest Service's regional and local offices, the Forest Service Chief's Office, or the Undersecretary's Office, even though each was specified in the FOIA Request. ECF No. 19-4 at 2.

The FOIA Request sought "pdf copies of the requested records on a discreet physical electronic media (on a flash or jump drive, for example)." ECF No. 19-4 at 3. Instead of complying with the FOIA Request as a whole, agency records were released on various dates from various agency components, including an October 22, 2020 website posting (Ex. 2 (release letter), Ex. 3 (website screenshot)) and website postings on November 2, 2021 (ECF No. 19-5) and January 7, 2022 (ECF No. 19-6), during an extension of FOIA's 30-day responsive pleading

deadline. ECF Nos. 8-11. None of the FOIA release letters purport to have gathered all responsive records or otherwise contain the elements of a final determination on the entire FOIA Request.

In short, the partial responses to the FOIA Request do not reference information gained by searching all USDA components likely to possess responsive records and the record contains no evidence of a search or final determination on the entire FOIA Request that corresponds with the scope of the request. ECF No. 19-4. No exceptional circumstances have been alleged, or supported by agency proffers, that would justify further agency delays.

## II.   STATUTORY BACKGROUND

FOIA mandates that, "upon any request for records [agencies] shall make the records promptly available to any person." 5 U.S.C. §552(a)(3)(A).  Responsive records may be withheld only when the agency demonstrates harm would result from releasing information falling within one of nine enumerated exemptions. 5 U.S.C. §552(b).  The prompt availability mandate requires federal agencies to make "reasonable efforts to search for" and promptly gather the requested records. 5 U.S.C. §552(a)(3)(C). "In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. §552(a)(3)(B).

Responsive agency records are identified via searches that must be designed to identify all agency records. To satisfy FOIA's search mandates, "the [agency] must show beyond material doubt...that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  Failure to promptly conduct a reasonable search results in "agency records improperly withheld from the complainant." 5 U.S.C. §552(a)(4)(B). "Nothing in the history or purposes of the FOIA counsels

contorting ["withheld"] beyond its usual meaning." *United States DOJ v. Tax Analysts*, 492 U.S. 136, 150 (1989).

Congress set forth nine exemptions that provide the only bases for an agency to withhold agency records from public access. 5 U.S.C. §552(b). Agencies and courts "cannot arbitrarily constrict [FOIA's nine exemptions…] by adding limitations found nowhere in its terms." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). Nor can an agency expand a FOIA Exemption, which must be applied as written and in support of FOIA's open government purposes. *Id*.

Congress amended FOIA in 1996 to directly address electronic records, which had begun to displace paper records. *Sample v. Bureau of Prisons*, 373 U.S. App. D.C. 308, 310, 466 F.3d 1086, 1088 (2006) *discussing* PUB. L. 104-231, 110 Stat. 3048, 3049 (codified as amended at 5 U.S.C. §552(f)(2)). Agency practices and pre-1996 caselaw were affected by what is known as the "E-FOIA" amendments. *Id*. "The amended version also directs agencies to provide records in the format specified by the requester" by mandating that "'an agency shall'" comply with the FOIA Request "'if the record is readily reproducible by the agency in that form or format.'" *Id*. *quoting* 5 U.S.C. §552(a)(3)(B).

Congress amended FOIA in 2007 and reaffirmed that FOIA continues to "ensure that the Government remains open and accessible to the American people and is always based not upon the 'need to know' but upon the *fundamental 'right to know*.'" Pub. L. No. 110-175, 121 Stat. 2524, Section 2 ¶6 (2007) (*emphasis supplied*).

In 2016, Congress enacted the FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538 (2016), to increase public access to government records. H.R. REP. NO. 391, 114th Cong., 2d Sess. 1, 7-8 (2016); S. REP. NO. 4, 114th Cong., 1st Sess. 2-5 (2015). Congress expressed "concerns that some agencies [were] overusing FOIA exemptions that allow, but do not require,

information to be withheld from disclosure." S. REP. NO. 4, 114th Cong., 1st Sess. 2 (2015); *see also* H.R. REP. NO. 391, 114th Cong., 2d Sess. 9 (2016) ("[T]here is concern that agencies are overusing these exemptions to protect records that should be releasable under the law.").  The requirement to link "harm" to a FOIA-recognized secrecy interest was adopted to impose a substantial and meaningful burden on agencies, is codified at 5 U.S.C. §552(a)(8)(A)(i), and applies to all nine exemptions. *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) ("Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'") *Id*. at 369 (quoting H.R. REP. NO. 391, 114th Cong., 2d Sess. 9 (2016)).

The relevant FOIA provisions set out the *de no*vo judicial review and relief provisions that allow FOIA Requesters to ensure prompt access to agency records. *See e.g.* 5 U.S.C. §552(a)(4)(B).  Although the amount of time that constitutes prompt access remains a case-specific question, the text and structure of FOIA confirms, "upon any request for records [agencies] shall make the records promptly available to any person." 5 U.S.C. §552(a)(3)(A) *applied by Citizens for Responsibility & Ethics in Wash. v. FEC ("CREW")*, 711 F.3d 180, 189 (D.C. Cir. 2013).  Once responsive agency records are identified, the term "promptly available," as used in FOIA and "depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *Id.* at 188 *citing* 5 U.S.C. §552(a)(3)(A), (a)(6)(C)(i).

### III.    STANDARD OF REVIEW

Judicial review of the agency's FOIA compliance with the FOIA Request and FOIA duties is conducted *de novo* based on a record established in the district court.[5]  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo'." *U.S. DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) *quoting* 5 U.S.C. §552(a)(4)(B).  FOIA, and the Courts' equitable powers, ensure case-specific remedies can be fashioned to cure an agency's failure to sustain its FOIA action.  *Id*.

In evaluating an agency's summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) *quoting Adickes v. S. H. Kress & Co*., 398 U.S. 144, 158-59, (1970).  An agency must establish beyond material doubt that it has conducted an adequate search—one reasonably calculated to uncover all relevant documents. *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007).  If the agency withholds records under one of the FOIA exemptions, it "bears the burden of proving the applicability of [the] claimed exemptions." *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011).

Judicial inquiry focuses on admissible evidence establishing the agency decisions made and methods used, not *post hoc* litigation explanations of what may have been done, because allowing "[p]ermitting agencies to invoke belated justifications […] can upset 'the orderly functioning of the process of review,' […] forcing both litigants and courts to chase a moving target."  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*., 140 S. Ct. 1891, 1909 (2020)

---

[5]FOIA specifically limits some claims to judicial review on an administrative record. *See e.g*. 5 U.S.C. § 552(a)(4)(A)(vii) (fee waiver), 5 U.S.C § 552(a)(6)(E)(iii) (expedited request). No such claims are involved here.

*quoting SEC v. Chenery Corp*., 318 U. S. 80, 94, (1943).  When affidavits are offered, they must be detailed and based on personal knowledge.  *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.").

FOIA cases can require trial, but are typically resolved during summary judgment, which involves four distinct inquiries.  First, the burden is on the agency to proffer admissible evidence to show it has met each element of its FOIA duties. *Reporters Comm. for Freedom of Press*, 489 U.S. at 755 *quoting* 5 U.S.C. §552(a)(4)(B).

Second, the FOIA Requester may point out, without the necessity of evidence, that the agency has not met its burden with admissible evidence, because, if *de novo* "review of the record raises substantial doubt [...] summary judgment is inappropriate." *Duenas Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003).

Third, "the requester may nonetheless produce countervailing evidence" to demonstrate that "summary judgment [for the agency] is not in order." *Founding Church of Scientology of Washington, D. C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (reviewing search).  Fourth, record evidence of agency bad faith in processing the FOIA Request may be considered and provides an independent basis, beyond the statutorily derived elements, for denying an agency summary judgment motion. *Akel v. United States DOJ*, 2021 U.S. Dist. LEXIS 248155, at *11-12 (D.D.C. 2021). "Applying an a priori filter based on the agency's good-faith belief that its officers and employees are trustworthy and do not violate legal or ethical norms runs head on into FOIA's promise of transparency." *Id*.

Taken together, "if any reasonable view of the record would permit resolution of a factual dispute in favor of the non-movant, and that fact is material to the outcome, summary judgment

must be denied. FOIA cases are no exception." *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020) (denying cross motions for summary judgment).

Whether withholding occurs via delay, unreasonable search, mis-application of an Exemption, or refusal to comply with a form and format request, Congress conferred the district court with "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. §552(a)(4)(B).

## IV.    ARGUMENT

### A.    The USDA has not Issued a Final Determination on the FOIA Request.

"As of close of business on the day before [the Complaint was filed], [Plaintiff] WW ha[d] not received a final determination on the FOIA Request" or an "updated estimate for a final determination." ECF No. 1 at ¶48, *admitted* ECF No. 13 at ¶48.  Instead of a determination on the FOIA Request, Defendants fragmented USDA's processing of the FOIA Request into multiple parts with promises of future compliance that engendered confusion and denied Plaintiff its right to promptly access agency records.

> In an email dated September 25, 2020, the Departmental FOIA Office (DFO), now the Office of Information Affairs (OIA), informed you that it would process the Office of the General Counsel (OGC) and the Office of the Secretary (OSEC) *portions of your request*. The OGC request was assigned tracking number 2020-OGC-06519-F, and the OSEC request was assigned tracking number 2020-OSEC-06520-F. The DFO also stated that the USDA Forest Service's (FS) Washington, DC, and Region 2 FOIA Offices would *concurrently process your request* and provide you with a direct response.

ECF No. 19-5 at 2 (*emphasis added*).  The agency cannot produce a determination corresponding to the scope of the FOIA Request. ECF No. 19-4 at 2-3.

FOIA "contemplates that responsive documents must be collected and examined, and decisions made about which to produce, in order for the agency to make a 'determination.'" *CREW,* 711 F.3d at 188. Unless a timely determination is made, "the agency cannot rely on the

administrative exhaustion requirement to keep cases from getting into court." *Id*. at 189.  The

record does not, and cannot, include a pre-litigation "determination" on the FOIA Request

because the responsive documents from multiple USDA components were not gathered until

after the Complaint was filed. ECF Nos. 19-5, 19-6 (providing descriptions of searches

conducted by Office of General Council and unspecified Washington D.C. Offices during this

litigation).

The White River National Forest Supervisor's Office provided a partial response before

this litigation was filed.  Ex.2 (10/22/2021 Release Letter), Ex. 3 (release website screenshot

10/28/2020) last visited 2/16/2022.  The Office of General Counsel ignored the FOIA Request

until after this litigation was filed. ECF Nos. 19-5 (OGC Response), 19-6 (OGC Supplemental

Response).  There is no indication in the record that all personnel likely to possess records in the

relevant offices of the Ranger Districts, Rocky Mountain Region, Office of the Undersecretary,

Forest Service Chief, or other USDA offices located in or outside of Washington D.C. were

asked to gather records responsive to the FOIA Request.  These omissions in the declarations

confirm that there was no final determination on the FOIA Request, as conclusively established

by the Answer, which admits a final determination was not issued. ECF No. 1 at ¶48, *admitted*

ECF No. 13 at ¶48.

Requiring the agency to process and make its search and withholding determinations on

the FOIA request as a whole, with the benefit of information gained while gathering responsive

agency records, is consistent with FOIA's purposes.  "[I]f the agency has not issued its

'determination' within the required time period, the requester may bring suit directly in federal

district court without exhausting administrative appeal remedies." *CREW,* 711 F.3d at 182.  To

inform a FOIA determination, the agency must: "(i) gather and review the documents; (ii)

determine and communicate the scope of the documents it intends to produce and withhold, and

the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id. at* 188. FOIA "does not allow agencies to keep FOIA requests bottled up for months or years on end while avoiding any judicial oversight." *CREW,* 711 F.3d at 190.

The statutory duties, as interpreted by *CREW,* apply to the "entire request" and "interim responses do not constitute determinations" that require administrative appeals. *W. Res. Legal Ctr. v. Nat'l Oceanic & Atmospheric Admin.,* 2020 U.S. Dist. LEXIS 217925, at *13 (D. Or. Nov. 20, 2020) *applying CREW.*  Importantly, a segmented "determination" would not make sense because the requester, court, and the agency "must revise its assessment of what is 'reasonable' in a particular case to account for leads that emerge during [the agency's] inquiry." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).  An agency's compliance with a FOIA request, and the justification for its search and withholding decisions, cannot be established until after all the documents are gathered from all agency components and personnel. *Id*.

The partial, pre-litigation response by the Forest Supervisor (Ex. 2) does not meet the *CREW* elements for a final determination on the entire FOIA Request.  None of the post-complaint responses constitute a final determination on the entire FOIA Request that was made after the records were gathered from all USDA components. ECF No. 19-4 at 2-3.  Defendants' generic proffers, especially the failure to identify any persons in the *Vaughn* indexes (ECF Nos. 19-7, 19-9), confirm that nothing in the record provides detailed information necessary to review and uphold the USDA/Forest Service Washington Offices, Chief's Office, Undersecretary's Office, Regional Office, Supervisor's Office, or Ranger District's withholdings or searches. 19-4 at 2-3.

Plaintiff respectfully requests that the Court fashion appropriate findings and an order setting forth a specific deadline for the agency to gather and release all agency records that are responsive to the FOIA Request, requiring Defendants' to file admissible summary judgment evidence of the search and any withholdings with the Court, and setting a deadline for Plaintiffs to file a response to the agency's filing.

### B.   Defendants' Proffers do not Meet FOIA's Reasonable Search Standard

In order to survive summary judgment and *de novo* review of the search, "an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) *citing Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (agency "burden [is] to show that its search efforts were reasonable and logically organized to uncover relevant documents."). The FOIA Request (ECF No. 19-4, 2-3) provides detailed locations and "reason to know that certain places may contain responsive documents [and the agency] is obligated under FOIA to search [those places] barring an undue burden." S*ee Valencia–Lucena*, 180 F.3d at 327.

Congress enacted the "reasonably describes" language specifically to replace a prior statutory standard ("request for identifiable records") that agencies had been using to justify withholding records not requested with sufficient specificity. *Truitt v. Dep't of State*, 897 F.2d 540, 544 & nn.26-27 (D.C. Cir. 1990). In short, "an agency . . . has a duty to construe a FOIA request liberally." *Nation Magazine,* 71 F.3d 885, 890 (D.C. Cir. 1995) *accord Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp. 3d 7, 12 (D.D.C. 2018) ("FOIA requests are not a game of Battleship. The requester should not have to score a direct hit on the records sought based on the precise phrasing of his request.").

The agency has not met its burden, and uncertainty or undue burden was not asserted as the basis to ignore places and personnel identified in the FOIA Request. Countervailing evidence in admissible public records contradict declarations that lack personal knowledge and confirm that the limited scope and search methods cannot survive summary judgment. A new search reasonably calculated to return all agency records, based on a liberal interpretation of the FOIA Request, is required. *Weisberg v. U.S. Dep't of Just*., 705 F.2d 1344, 1351 (D.C. Cir. 1983).

### 1.    Locations and Persons Likely to Possess Records were not Searched

The agency has not attempted to meet its burden, with admissible evidence, to "show beyond material doubt...that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Id*. FOIA creates an agency's duty "to follow through on obvious leads to discover requested documents" wherever they may be located within the agency. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). Even if the declarations appear to meet this burden, which they do not, responsive agency records and other evidence may contain a "positive indication […] of overlooked materials" that confirms the search locations was inadequate. *Id*. at 327. Here, the agency proffers leave material doubt as to the search design and implementation of the search.

The declarations provide no evidence documenting a search of the devices and personnel in the Undersecretary's Office, even though the FOIA Request identified the Undersecretary's Office. ECF No. 19-4 at 2-3.

There is no evidence identifying the persons in Washington D.C. whose records were searched. ECF No. 19-8 (providing generic description of a post-complaint search conducted in Washington D.C.). The FOIA Request stated that various Washington D.C. locations and persons were likely to possess records. ECF No. 19-4 at 2-3. Yet, the agency failed to provide

evidence that could meet the burden to show a FOIA-compliant search of USDA's Washington D.C. Offices, including the Forest Service Chief and Undersecretary's Office. *Id*.

Two declarations provide vague descriptions of persons and locations that were searched during this litigation. The first involves three attorneys in the Office of General Counsel (Kenneth Capps, Kenneth Paur, and Kirk Minckler), and vaguely referenced "Washington Office custodians." ECF No. 19-3 ¶9. The second declaration is limited to FOIA processing based on searches carried out by "nine (9) Washington Office custodians," in response to the OGC segment (2020-OGC-06519-F). ECF No. 19-8 at ¶¶18-19. The offices and personnel are not identified. The lack of detail must be construed to confirm that OGC lacked the necessary information to identify or "to follow through on obvious leads to discover requested documents." *Valencia-Lucena,* 180 F.3d 321, 325 (D.C. Cir. 1999).

There is no evidence regarding the scope, location, or methods used for whatever search resulted in the October 22, 2020 partial response from the White River Forest Supervisor. Ex. 2. The summary judgment record contains no evidence to meet the agency burden to demonstrate FOIA-compliant searches for agency records maintained in Regional Offices, "the Office of the Chief of the U.S. Forest Service, and the White River National Forest and Districts within the White River National Forest." ECF No. 19-4 at 2. In the absence of evidence regarding searches of regional and local offices, the agency has not met it summary judgment burden and it is reasonable to infer that no component of the USDA Forest Service, whether located in Colorado or Washington D.C., conducted a search reasonably calculated to uncover all responsive agency records. *Valencia-Lucena*, 180 F.3d at 325.

Hearsay in post-hoc litigation declarations identifying three agency attorneys (ECF No. 19-3 at ¶9) who gathered and released some documents, is not enough to carry the agency burdens. "[I]f any reasonable view of the record would permit resolution of a factual dispute in

favor of the non-movant, and that fact is material to the outcome, summary judgment must be denied. FOIA cases are no exception." *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C.Cir. 2020).  The locations and persons identified in the FOIA Request are material and provided "reason to know that certain places may contain responsive documents [and the agency] is obligated under FOIA to search [those places] barring an undue burden." S*ee Valencia–Lucena*, 180 F.3d at 327.

The record does not support summary judgment for the agency, but does support an order compelling the agency to conduct a FOIA-compliant search of all persons and locations likely to possess responsive agency records.

## 2.   Declarations are Inadequate to Show FOIA-Compliant Search Methods

The declarations do not meet the agency "burden to show that its search efforts were reasonable and logically organized to uncover relevant documents."  *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015).  In applying this burden, this Court observed that "an affidavit that identifies agency components tasked with conducting a search of certain files but does not explain how [the components] searched within those files, including by identifying the employees chosen to conduct the search and disclos[ing] the search terms used by the [agency] and the type of search performed, is insufficient to meet that burden."  *Ctr. for Biological Diversity v. BLM*, 2021 U.S. Dist. LEXIS 44231, at *23 (D.D.C. Mar. 9, 2021) (internal quotations omitted).

The USDA OGC proffers are provided through the declaration of a Government Information Specialist that was hired by Defendants in November 2021, and had no role in the pre-litigation FOIA processing. ECF No. 19-3 ("Enciso Declaration") at ¶1.  The Enciso Declaration provides second-hand descriptions of searches involving three attorneys in the

Office of General Counsel (Kenneth Capps, Kenneth Paur, and Kirk Minckler) and vaguely references "Washington Office custodians."   ECF No. 19-3 at ¶9.

The Shofield Declaration is similarly deficient in describing search methods applicable to unidentified "Washington Office custodians" whose roles in the agency are undisclosed.  ECF No. 19-8.  On this scant record, it is reasonable to infer that "custodians," persons whose duties involve cleaning and building maintenance, were the only non-OGC D.C. Office personnel whose agency records were subjected to a search. *Id.*  The search described by the Shofield Declaration yielded 105 pages of responsive emails and other agency records.  *Id.* at 9-10.

Both declarations not only fail to provide details on the persons and methods involved in the search, and both identify inadequate search terms that resulted in deficient electronic searches. ECF Nos. 19-3, 19-8. "[U]ncertainty regarding the search term precludes the Court from entering summary judgment." *Flete-Garcia v. United States Marshals Serv.*, 2021 U.S. Dist. LEXIS 56262, at *18 (D.D.C. Mar. 24, 2021) (discussing impacts of variations and common misspellings on search).  The facts here convey more than uncertainty; the declarations contain no search terms for most of the agency components and are per se unreasonable. *Id.*  For the vaguely referenced searches, the Enciso Declaration identified fifteen terms, including four variations on the oft-mispelled "Berlaimont" and a series of names and abbreviations.  The only keywords identified in the Shofield Declaration were "Berlaimont" and "Edwards Overlook Parcel."  ECF No. 19-8 at ¶¶9-10.  In setting aside similarly divergent search terms, the Court observed that "while FOIA might not require complete uniformity [... during] agency-wide searches, […] wide and unexplained variances in the field offices' search parameters fall short of this standard." *Tushnet v. United States Immigration & Customs Enf't*, 246 F. Supp. 3d 422, 435 (D.D.C. 2017).  The record lacks the evidence of well-defined search terms required to conduct an agency-wide FOIA search, and precludes summary judgment.

In sum, the record lacks evidence to support summary judgment because, "the adequacy of a search is not determined by the initial results, but rather, by the totality of [a] defendant's efforts to locate and respond to a FOIA request." *Airaj v. United States*, 2016 U.S. Dist. LEXIS 55750, 2016 WL 1698260, at *7 (D.D.C. Apr. 27, 2016); *see also Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013).  Plaintiff respectfully requests a finding that the search was inadequate and an order compelling a FOIA-compliant search be completed by a date certain.

### C.    FOIA Exemptions

As amended, FOIA requires an agency to provide "focused and concrete demonstration [of harm within] specific context of the agency action at issue" before withholding agency records.  *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th at 369-70.  The "harm" provision adopted in 2016 was codified at 5 U.S.C. §552(a)(8)(A)(i) and applies to all nine FOIA Exemptions. *Id. citing* 5 U.S.C. §552 (b). The two Vaughn Indexes only address OGC and unspecified Washington Office withholdings.  ECF Nos. 19-7, 19-9.  Neither the Vaughn Index nor the declarations contain the information required to withhold agency records pursuant to Exemption 5 or Exemption 6.

"Vaughn Index" is a term derived from *Vaughn v. Rosen*, and usually consists of a detailed affidavit and a privilege log, the purpose of which is to "permit the court system effectively and efficiently to evaluate the factual nature of disputed information." 484 F. 2d 820, 826, *cert. denied*, 415 U.S. 977 (1974). The Motion disavows the need to provide a detailed Vaughn Index in the present case. ECF No. 19-1 at 9.

Key information required to justify each withholding based on the element of each particular exemption is not included in the "conclusory and generalized allegations of exemptions" proffered by the agency, thereby burdening the court and precluding adversarial testing of the agency's evidence. *Vaughn v. Rosen*, 484 F.2d at 828. Further, the agency proffers

in this case do not meet the agencies' burden to demonstrate a FOIA exemption applies, and fail to link such exemptions to concrete foreseeable harm. *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th at 369-70.

An agency motion that openly departs from the effective and efficient means of justifying withholdings via a detailed *Vaughn Index* is unlikely to survive summary judgment. ECF No. 19-1 at 9.  Logic and fairness support the uncontroversial conclusion that "a litigant given one good bite at the apple should not have a second." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed. Cir. 1984). The District Court has discretion to simply rule on the agency proffers and compel disclosure of all agency records withheld to date, without further delay or expenditure of litigation resources.  *Maydak v. United States DOJ,* 218 F.3d 760, 769 (D.C. Cir. 2000) (holding that an agency cannot raise FOIA exemptions seriatim and ordering production of all the relevant documents without regard to any belatedly asserted exemptions).

### 1.     Exemption 5

FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) *quoting* 5 U.S.C. §552(b)(5).  The courts have recognized various litigation privileges as falling within Exemption 5.  In the present case, deliberative process, attorney work product, and attorney/client privilege are asserted.  Each has its own set of elements, and each are addressed in turn.

"Consistent with FOIA's presumption in favor of disclosure, the exemptions are to be construed narrowly, and the withholding agency bears the burden of showing that the claimed exemption applies." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 538 F.

Supp. 3d 124, 131 (D.D.C. 2021) *citing Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61

(1976); *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008).

A commonality across all three assertions of Exemption 5 based privilege involves a lack

of evidence establishing the role played by any specific local, regional or national offices or

personnel in formulating policy, making a formal decision, or acting as an attorney representing

a client in preparation for litigation.  Except for hearsay testimony regarding searches conducted

by three OGC attorneys whose specific involvement in the administrative process was not

described for any specific document, the record is devoid of evidence as to the persons involved

in creating, obtaining, and circulating the agency records, and the withheld information therein.

ECF No. 19-3 at ¶9.

There is no evidence to establish whether the three identified attorneys – the only persons

named in the proffers - were carrying out normal agency processes when providing input on draft

documents and relaying information to and from the project proponent. General statements of

law by agency counsel do not receive litigation privileges. *See Reporters Comm. for Freedom of

the Press v. U.S. Customs*., 2021 U.S. Dist. LEXIS 200240, at *33 (D.D.C. 2021) *applying

Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980); *see also In re

Qwest Communs. Int'l*, 450 F.3d 1179, 1186 (10th Cir. 2006); *see* Fed. R. Civ. P. 26(b)(3)(A);

*see also*, *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977) (litigation privilege involving

attorneys "does not protect materials prepared in the 'ordinary course of business,'" such as

factual investigations conducted by an attorney acting as an investigator.).

Waiver, based on communications between OGC and the project proponent's attorneys is

likely, but the agency provided no evidence regarding actions taken by any person, whether an

agency attorney or agency personnel, to protect any privilege from waiver. Similarly, the proffers

lack concrete evidence of foreseeable harm necessary to invoke agency secrecy. The agency

proffers fall short of the basic principle that the party seeking to assert a privilege has the burden of establishing its applicability. *Citizens for Resp. & Ethics in Washington*, 538 F. Supp. 3d at 131.   Each of these deficiencies support an order directing that Defendants forthwith release all withheld records.

a.      **Deliberative Process**

To qualify for consideration under the deliberative process privilege, the agency record must be "inter-agency or intra-agency memorandums or letters."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). The goal of the deliberative process privilege is distinct from recognized litigation privileges specified in Exemption 5, and seeks to "prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975), 421 U.S. at 151; *see also United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).  The deliberative process category is justified by a belief that "agencies craft better rules" and engage "rigorous deliberation" only if exempted from FOIA's presumption of access to all agency records. *Judicial Watch, Inc. v. Department of Defense*, 847 F.3d 735, 739 (D.C. Cir. 2017).

The deliberative process aspect of Exemption 5 may only be invoked for documents that are both predecisional and deliberative. *Fish & Wildlife Serv.*, 141 S. Ct. at 785-786.  An agency record may be predecisional if it was "generated before the agency's final decision on the matter[.]" *Id.* at 786.  A "final decision on the matter" is not synonymous with a "final agency action" defined by the Administrative Procedure Act.  *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 788 (2021). "To determine whether the privilege applies, [courts] we must evaluate […] whether the [agency] treated [the decision on a matter] as final." *Fish and Wildlife Service,* 141 S. Ct. 777, 788 (2021).  The record contains no evidence on the

finality of any decision, even though the Final Environmental Impact Statement and other final decisions have issued. Ex. 1.

Further, A deliberative agency record "reflects the give-and-take of the consultative process" and does not extend to solely factual materials. *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States*, 617 F.2d at 866); Reporters *Comm. for Freedom of the Press v. FBI,* 3 F.4th 350, 362 (D.C. Cir. July 2, 2021).  Here, the *Vaughn* Index lists emails to and from unidentified persons with vague descriptions such as "communication about Berliamont" that do not support the classification as inter or intra-agency memorandum covered by Exemption 5. ECF No. 19-7, 19-8.  Moreover, the *Vaughn* Indexes fail to provide detailed information regarding the predecisional and deliberative elements of any withheld agency records.

Last, when asserting the foreseeable harm requirement to Exemption 5's deliberative process privilege, "agencies must concretely explain how disclosure 'would'—not 'could'— adversely impair internal deliberations." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (*emphasis supplied*).  No concrete explanation linking harm to the release specific agency record was provided by either Vaughn index.

 Based on the lack of evidence to meet the agency burden, Plaintiff respectfully requests an order for production of all withheld documents without regard to any belatedly asserted justifications.  *Maydak*, 218 F.3d 760, 769 (D.C. Cir. 2000).

### b.     Attorney/Client Communication

Exemption 5 recognizes the attorney/client communications can generate "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §552(b)(5).  It is well-established that "the Government may invoke the attorney-client privilege in civil litigation to protect

confidential communications between Government officials and Government attorneys." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 170 (2011).  However, the agency must establish the elements of the attorney-client privilege via admissible evidence. *Ctr. for Biological Diversity v. United States EPA*, 279 F. Supp. 3d 121, 152 (D.D.C. 2017).

> [Even if] a document was shared with or by an attorney does not magically render a communication privileged. [the agency] must, at the very least, (1) describe with sufficient particularity the nature of the legal issue or issues for which advice was sought; (2) explain whether the communications sought legal advice, conveyed legal advice, or both; and (3) provide evidence that the communications were confidential.

*Id*.

The *Vaughn* Indexes do not confirm whether an actual attorney was involved in any communication, describe the nature of the legal issue, or provide any evidence that the communications were confidential. *Id*. At best, the nature of the legal issues are vaguely asserted by non-attorney declarations that provide no basis to separate confidential information from "counsel's written responses containing neutral, objective analyses of agency regulations [that] are not privileged." *Hornbeck Offshore Transp., LLC v. United States Coast Guard,* 2006 U.S. Dist. LEXIS 14389, at *47 (D.D.C. Mar. 20, 2006) (internal quotations omitted).

An order directing the production of all withheld agency records is the appropriate summary judgment remedy. *Maydak,* 218 F.3d 760, 769 (D.C. Cir. 2000).

### c.     Attorney Work Product Privilege

Attorney work product may constitute "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §552(b)(5).  The *Vaughn* Index is "insufficient to conclude that the documents withheld were sent for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007) (internal quotation marks omitted).

Instead of meeting these and other attorney work product criteria, each Vaughn Index entry can be reasonably construed as involving general statements of law by agency counsel that do not receive litigation privileges. *See Reporters Comm. for Freedom of the Press v. U.S. Customs*., 2021 U.S. Dist. LEXIS 200240, at *33 (D.D.C. 2021) *applying Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

Summary judgment cannot be granted because the Vaughn Indexes and declarations containing "the agency's claims are conclusory, merely recit[e] statutory standards, [and/or] are too vague or sweeping" to establish attorney work product for any withheld agency records. *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).

### 2.    Exemption 6

Exemption 6 only "protects from disclosure 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy'" if coupled with a showing of actual, foreseeable harm. 5 U.S.C. §552(b)(6). FOIA "uses the term 'personnel' as a modifier meaning 'human resources'" files "showing, for example, where [an employee] was born, the names of his parents, where he has lived from time to time, his . . . school records, results of examinations, [and] evaluations of his work performance." *Milner v. Dep't of the Navy*, 562 U.S. 562, 570 (2011) (internal quotations omitted).  The agency provides generalized and sweeping statement that do not identify author, sender, and recipient for any withheld record, and it is reasonable to infer that none were "maintained in the human resources office [often known] as the 'personnel department.'" *Id*.  In short, the proffers provide no basis to withhold information pursuant to Exemption 6.

Even if the proffers met the agency burden, which they do not, these same Defendants have successfully argued that citizens' private phone numbers, and similar information, "can be connected to publicly available data to form a 'comprehensive picture' of the associated

businesses." *Telematch, Inc. v. United States Dep't of Agric.*, 2020 U.S. Dist. LEXIS 223112, at *21 (D.D.C. Nov. 27, 2020).  Similarly, the withheld contact information can form a comprehensive picture of the interactions between and among the agency, project proponents, and others to help citizens submitting FOIA Requests know that their government is up to.  *Id*.

There is no basis to withhold any agency record pursuant to Exemption 6, and if there were a recognized privacy interest, the public interest in piecing together a comprehensive picture of the agency activities supports disclosure.

### 3.     Waiver of All FOIA Exemptions

Information that has been shared outside the agency or has become part of the public domain precludes all claims of confidentiality in the present case.  *C.N.A. Financial Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987). The test is whether the agency met its burden to describe confidential information and establish that agency personnel and attorneys have never shared the information with "third parties" not covered by the privilege. *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977).  The record does not contain evidence of any safeguards used to ensure withheld information was not shared outside the protected group of agency attorneys, staff, and decisionmakers.  In the absence of evidence on the waiver element, summary judgment inferences compel the conclusion that the withheld information was shared, and therefore the privileges were waived. Summary judgment is inappropriate when contradictory inferences may be drawn from the evidence, or lack thereof. *See, e.g., Londrigan v. FBI*, 670 F.2d 1164, 1171 n.37 (D.C. Cir. 1981).

The conclusion that information was shared outside the agency is supported by search terms that included numerous attorneys who work for the proponents. ECF No. 19-3 at ¶9 (ten search terms include attorneys or Berlaimont Estate's agents).  With such a large number of persons interested and involved, it is reasonable to infer that some and perhaps all, withheld

agency records and information was communicated by via phone calls or meetings where the information and agency records were disclosed during review and discussion. Ex. 1 at 282-293 (listing persons involved in the Berlaimont Proposal).

"It must be remembered that once there is disclosure, the information belongs to the general public." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). It is not necessary that the agency record be transmitted.  It is enough that the withheld information was disclosed.

Here, the burden is on the agency to demonstrate steps taken to identify, establish, and maintain confidentiality, but agency attorneys and decisionmakers who would possess direct knowledge of that information have not provided any declaration to meet the agency's burden. *See Akel v. United States DOJ*, 2021 U.S. Dist. LEXIS 248155, at *11-12 (D.D.C. 2021 ("Applying an *a priori* filter based on the agency's good-faith belief that its officers and employees are trustworthy and do not violate legal or ethical norms runs head on into FOIA's promise of transparency.").

### D.  Form and Format Violations

FOIA, and USDA regulations, allow the FOIA Request to specify the form and format of the agency records. 5 U.SC. §552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any [readily reproducible] form or format requested"); 7 C.F.R. §1.5 (d) ("Generally, requesters may specify the preferred form or format (including electronic formats) for the records sought. Components will accommodate the request if the records are readily reproducible in that form or format.").  In order to facilitate this mandate, FOIA imposes the ongoing requirement that "the agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section." 5 U.SC. §552(a)(3)(B).  There is no evidence that Defendants complied with these mandates.

The FOIA Request sought agency records in searchable "pdf copies of the requested records on a discreet physical electronic media (on a flash or jump drive, for example)." ECF No. 19-4 at 3. Responsive agency records were released on October 28, 2020 via an ethereal website posting instead of the requested electronic media. Ex. 1. Additional releases were made by ethereal website postings on November 2, 2021 (ECF No. 19-5) and January 7, 2022 (ECF No. 19-6), during an extension of FOIA's 30-day responsive pleading deadline. ECF Nos. 8-11. None of the releases complied with the requested form and format. ECF No. 19-4 at 3. There is no basis in the record for agencies to disregard FOIA's plain language - or the FOIA Requests' preference for searchable pdfs on a physical media – by posting documents temporarily to an agency website.

Plaintiff respectfully requests a finding that USDA and its components are able to readily produce emails, letters, and other similar documents requested by this FOIA Request as searchable pdfs on physical electronic media. Plaintiff further seeks an order directing compliance with the form and format request for all documents previously released, and for all agency records released in response to this FOIA Request/litigation going forward.

## V.    CONCLUSION

The agency search was unreasonable and its proffers lack detailed, non-conclusory evidence required for the agency to meet its burden in FOIA litigation. Plaintiff respectfully requests summary judgment be denied and the agency ordered to begin its search for agency records that are responsive to FOIA Request anew, bounded by a thirty-day deadline for completing the processing and release of all responsive agency records not subject to a FOIA Exemption.

**RESPECTFULLY SUBMITTED, MARCH 18, 2022,**

/s/ Travis E. Stills
Travis E. Stills, D.C. Bar # CO0101
Energy & Conservation Law
227 E. 14th Ave, #201
Durango, Colorado 81301
(970) 375-9231
stills@eclawoffice.org

Matthew Sandler
D.C. Bar #CO0105
Rocky Mountain Wild
1536 Wynkoop St. Suite 900
Denver, CO 80202
303-579-5162
Matt@rockymountainwild.org

*Attorney for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2022 I served a copy of this filing on all parties using the CM/ECF system, unless otherwise noted below.

 s/Travis E. Stills
**Travis E. Stills**