UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILDERNESS WORKSHOP,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE, et al.,<br><br>Defendants. | Civil Action No. 21-2108 (JMC) |

**COMBINED REPLY IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO
<u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Introduction ........................................................................................................................ 1

Argument ........................................................................................................................... 1

A.  USDA has Issued a Final Determination on Plaintiff's FOIA Request ............... 1

B.  Defendants' Proffers Meet FOIA's Reasonable Search Standard ....................... 2

    1.  All Locations and Persons Likely to Possess Records Were Searched ......... 2

    2.  Defendants' Declarations Are Adequate to Show FOIA Compliant Search Methods ......................................................................................................... 4

C.  FOIA Exemptions ................................................................................................. 6

    1.  Exemption 5 .................................................................................................... 6

    2.  Exemption 6 .................................................................................................... 8

    3.  Waiver of all FOIA Exemptions .................................................................... 9

D.  Form and Format Violation ................................................................................ 10

Conclusion ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Bigwood v. Dep't of Def.*,
132 F. Supp. 3d 124 (D.D.C. 2015) .................................................................................. 3

*Citizens for Resp. & Ethics in Wash. v. Dep't of Labor*,
478 F. Supp. 2d 77 (D.D.C. 2007) .................................................................................. 8

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ........................................................................................ 9

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,
No. CV 17-1208 (BAH), 2021 WL 918204 (D.D.C. Mar. 9, 2021) ............................... 6

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
778 F.3d 142 (D.C. Cir. 2015) ...................................................................................... 10

*FTC v. Boehringer Ingelheim Pharm., Inc.*,
892 F.3d 1264 (D.C. Cir. 2018) ...................................................................................... 9

*Gallant v. NLRB*,
26 F.3d 168 (D.C. Cir. 1994) .......................................................................................... 8

*General Elec. Co. v. Johnson*, Civ. A. No. 00-2855 (JDB),
2006 WL 2616187 (D.D.C. Sept. 12, 2006) ................................................................... 9

*Hickman v. Taylor*,
329 U.S. 495 (1947) ...................................................................................................... 10

*Hopkins v. HUD*,
929 F.2d 81 (2d Cir. 1991) ............................................................................................ 11

*Hornbeck Offshore Transp., LLC v. United States Coast Guard*,
2006 U.S. Dist. LEXIS 14389 (D.D.C. Mar. 20, 2006) ................................................. 9

*Hunton & Williams LLP v. U.S. Env't Prot. Agency*,
248 F. Supp. 3d 220 (D.D.C. 2017) ................................................................................ 6

*Judicial Watch v. Rossotti*,
285 F. Supp. 2d 17 (D.D.C. 2003) .................................................................................. 3

*Lasko v. Dep't of Just.*,
No. 10-5068, 2010 WL 3521595 (D.C. Cir. Sept. 3, 2010) ............................................ 4

*Martin v. Off. of Special Counsel*,
819 F.2d 1181 (D.C. Cir. 1987) .................................................................................................. 10

*Maynard v. CIA*,
986 F.2d 547 (1st Cir. 1993) ........................................................................................................ 4

*Military Audit Project*,
656 F.2d 724 (D.C. Cir. 1981) ...................................................................................................... 8

*Montanans For Multiple Use v. Barbouletos*,
568 F.3d 225 (D.C. Cir. 2009) ...................................................................................................... 1

*Physicians for Human Rights v. Dep't of Def.*,
675 F. Supp. 2d 149 (D.D.C. 2009) .............................................................................................. 3

*SafeCard Servs., Inc. v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991) .................................................................................................... 4

*Spirko v. U.S. Postal Serv.*,
147 F.3d 992 (D.C. Cir. 1998) ...................................................................................................... 8

*Telematch, Inc. v. United States Dep't of Agric.*,
2020 U.S. Dist. LEXIS 223112 (D.D.C. Nov. 27, 2020) ............................................................ 12

*Tushnet v. United States Immigration & Customs Enf't*,
246 F. Supp. 3d 422 (D.D.C. 2017) .............................................................................................. 7

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.*,
141 S. Ct. 777 (2021) .................................................................................................................... 7

*United States v. Deloitte LLP*,
610 F.3d 129 (D.C. Cir. 2010) .................................................................................................... 10

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ...................................................................................................................... 9

*Valencia-Lucena v. U.S. Coast Guard*,
180 F.3d 321 (D.C. Cir. 1999*)* ..................................................................................................... 3

*West v. Spellings*,
539 F. Supp. 2d 55 (D.D.C. 2008) ................................................................................................ 4

# INTRODUCTION

Defendants the United States Department of Agriculture ("USDA") and the United States Forest Service[1] ("Forest Service") (collectively, "Defendants"), demonstrated in their Motion for Summary Judgment (ECF No. 19) that, after conducting a reasonable search for records responsive to the Freedom of Information Act ("FOIA") request submitted by Plaintiff Wilderness Workshop ("Plaintiff"), Defendants provided all non-exempt responsive records to Plaintiff. For that reason, Defendants are entitled to summary judgment. *See id.* Plaintiff now challenges the adequacy of Defendants' searches, exemption invocations, and declarations, and claims that because of the alleged flaws there are genuine issues of material fact. *See* Pl.'s Opp. (ECF No. 21).

Specifically, Plaintiff first argues that the USDA has not issued a final determination on the FOIA request. Pl.'s Opp. at 10. Second, Plaintiff asserts that Defendants' proffers do not meet FOIA's reasonable search standard. *Id.* at 13. Third, Plaintiff claims that Defendants improperly applied FOIA exemptions. *Id.* at 18. Fourth, and finally, Plaintiff argues that Defendants provided the records in an improper format. *Id.* at 26. For reasons more fully explained below, Plaintiff's attacks do not hold water, and the Court should grant Defendants' Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.

# ARGUMENT

### A. **USDA Has Issued a Final Determination on Plaintiff's FOIA Request**

First, Plaintiff appears to argue that Defendants have not issued a final determination on the FOIA request for two reasons: (1) a final determination was not issued as of the date the Complaint was filed; and (2) because the search for records and justifications for withholdings

---

[1] The Forest Service is a component of USDA. *Montanans For Multiple Use v. Barbouletos*, 568 F.3d 225, 226 (D.C. Cir. 2009) ("The United States Forest Service [is] an agency of the Department of Agriculture[.]").

were inadequate. *See* Pl.'s Opp. at 10–13. These arguments fail for multiple reasons. First, Plaintiff's attack on a final determination is a strawman, as Defendants do not contend that they issued a final determination as of the date the Complaint was filed. Rather, Defendants have provided evidence that in the interim they issued a final determination. *See* Supp. Scofield Decl. (Ex. A) ¶ 13–16; Supp. Enciso Decl. (Ex. B) ¶ 13. With respect to Plaintiff's second argument, Plaintiff conflates two issues. Indeed, Plaintiff has a separate section in its brief in which it attacks the adequacy of Defendants' searches and withholdings. *See* Opp. at 13, 18. Thus, in the interest of judicial efficiency, Defendants will address those arguments in Section B and C below.

### B.   Defendants' Proffers Meet FOIA's Reasonable Search Standard

Plaintiff argues that Defendants' proffers do not meet FOIA's reasonable search standard because "locations and persons likely to possess records were not searched," and Defendants' declarations are inadequate to show FOIA-compliant search methods. *See* Opp. at 14–16. Plaintiff is incorrect, and nearly all its arguments lack any legal support.

#### 1.   All Locations and Persons Likely to Possess Records Were Searched

In support of Plaintiff's argument that locations and persons likely to possess records were not searched, Plaintiff confuses the issues. Plaintiff merely alleges in conclusory fashion that the search was unreasonable because Defendants did not search the "location or people that Plaintiff asked to be searched." *See, e.g.,* Pl.'s Opp. at 14 ("The declarations provide no evidence documenting a search of the devices and personnel in the Undersecretary's Office, even though the FOIA Request identified the Undersecretary's Office."). Any dispute as to this fact is immaterial, and Plaintiff cites no support for the proposition that a requester may prescribe the precise contours of an agency's search and that failure to do a requester's bidding renders a search unreasonable. Plaintiff conspicuously cannot cite any support for this proposition, and the reason

2

for that is plain—the standard of reasonableness does not require that a defendant search all areas that a plaintiff requests.[2] *See Bigwood v. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) ("[T]he agency's search for records need not be exhaustive, but merely reasonable. The proper inquiry is not whether there might exist additional documents possibly responsive to a request, but whether the agency conducted a search reasonably calculated to uncover relevant documents."); *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured."); *Oglesby*, 920 F.2d at 68 (an agency need not search every record system, but only those which it believes are likely to hold responsive records). Because Defendants searched the areas "which [they] believe[] are likely to hold responsive records," their search was reasonable. *See* Supp. Scofield Decl. ¶¶ 7–8; Supp. Enciso Decl. ¶¶ 8, 10.

Next, Plaintiff argues that there are various details that are not included in the declaration, such as "the persons in Washington D.C. whose records were searched," or the offices and personnel in the "FOIA processing based on searches carried out by nine (9) Washington Office custodians[.]" Pl.'s Opp. at 15. Plaintiff asserts that this and other information is required to identify or "to follow through on obvious leads to discover requested documents." *Id.* Plaintiff's argument lacks merit. Defendants have stated that there is no other area reasonably likely to contain

---

[2] Plaintiff makes this argument later when it states that "[t]he locations and persons identified in the FOIA Request are material" and provided "reason to know that certain places may contain responsive documents [and the agency] is obligated under FOIA to search [those places] barring an undue burden." Pl.'s Opp. at 16. However, the case Plaintiff cites in support—*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999)—states no such fact about a FOIA request itself providing "reason to know." To the contrary, caselaw is clear that an agency need not conform its search to a plaintiff's request. *See Physicians for Human Rights v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) ("there is no bright-line rule requiring agencies to use the search terms proposed in a FOIA request").

responsive documents, and that all areas reasonably likely to contain responsive documents were searched. SUMF ¶ 6, 11. Importantly, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted); *West v. Spellings*, 539 F. Supp. 2d 55, 60 (D.D.C. 2008). Once an agency has met its burden of demonstrating the adequacy of its search, the agency's position can be rebutted "only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993); *Elliott*, 2006 WL 3783409, at *3 (explaining that to satisfy his evidentiary burden, the plaintiff "must present evidence rebutting the agency's initial showing of a good faith search"). Speculative or hypothetical assertions, such as the ones Plaintiff makes here, are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *See, e.g., Lasko v. Dep't of Just.*, No. 10-5068, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010) (per curiam) (explaining that the adequacy of the search is not undermined by mere speculation that additional documents might exist); *Oglesby*, 920 F.2d at 67 n.13; *Elliott*, 2006 WL 3783409, at *3 (noting that speculative claims about the existence of other documents cannot rebut the presumption of good faith accorded to agency declarations). As shown below, the agency's declarations establish the reasonableness of the agency's searches.

    **2.    Defendants' Declarations Are Adequate to Show FOIA Compliant Search Methods**

Next, Plaintiff asserts that Defendants have not "explained" their search or "identified" the employees chosen to conduct the search, and argues Defendants' use of the term "custodian" is an example of this lack of explanation. Pl.' Opp. at 16–17. Plaintiff is incorrect.

First, Defendants' Motion and declarations provide a detailed explanation of their search. For instance, as stated in its Motion, USDA searched for electronic communications, including

4

emails, Skype messages, and Teams messages, and sought the advice of its subject matter expert to identify the best custodians to search and which search terms to use. SUMF ¶ 3, 4. Further, USDA identified the employees as OGC attorneys Kenneth Capps, Kenneth Paur, and Kirk Minckler. *Id.* Within the accounts of these custodians, USDA searched for electronic communications containing any of the following terms: Berlaimont; Berliamont; Berlaimot; Berliamot; Andy Hensler; Peter Hart; Travis Stills; Vaclav Vochoska; Michael Connor; Andrew Spielman; Andy Spielman; Huperetes; Mauriello; MPG; mpgvail; and WilmerHale. *Id.* These search terms reasonably followed from Plaintiff's request, which sought records to the Berlaimont Estates request for expanded access to the Edwards Overlook Parcel within the White River National Forest. *See* Pl.'s Opp. at 1–2.

Moreover, the custodians identified above also conducted manual searches in September 2020 and again in September 2021 for hard-copy files, text messages, other electronic records, and any other types of records that may not have been captured as a result of the electronic searches. SUMF ¶ 5. The areas searched include laptop files and folders, local drives, backup servers, and hard-copy and scanned records located in the custodians' respective offices. *Id.* With respect to the Forest Service, it described how it conducted two distinct search efforts. SUMF ¶ 8. The first search effort was accomplished by submitting a FOIA eDiscovery request to the agency's eDiscovery and Enterprise Content Management Team to search for the emails of the nine specific Washington Office custodians identified as being engaged in the Berlaimont Estates Access Route project. *Id.* The keywords used were "Berlaimont" and "Edwards Overlook Parcel." *Id.* The second search effort was done through a search assignment that was sent to the same nine identified Washington Office custodians. SUMF ¶ 9. The custodians were informed that the types of agency records that they should consider in their search of paper records and/or electronic files were

5

"environmental analysis, letters, consultations, comments, meeting notes, phone call notes, handwritten messages, text messages, social media posts, maps, draft and final documents, inter- and intra-agency consultations, photos, GIS data, GPS data, correspondence." *Id.* The suggested keywords were "Berlaimont" and "Edwards Overlook." *Id.* Thus, these numerous facts clearly demonstrate that Defendants' declarations provide a detailed explanation of the searches, and reasonably identified the employees chosen to search.

Plaintiff misapprehends applicable FOIA law when it attacks the use of the term "custodian," assuming it refers to maintenance workers. *See* Pl.'s Opp. at 17. The law is clear that in the FOIA context the term custodian refers to a person with custody of records, and that term is commonly used in FOIA cases. *See*, e.g., *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 232–33 (D.D.C. 2017) ("The Corps identified a set of likely custodians within each office and used search terms to search their files and email."); *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, Civ. A. No. 17-1208 (BAH), 2021 WL 918204, at *9 (D.D.C. Mar. 9, 2021) (stating that the defendant failed to specify what the "custodians" did).

Finally, Plaintiff asserts that the search terms used were necessarily inadequate because there are variances in the search terms used by USDA and Forest Service. To the contrary, Defendant Forest Service had a purpose in using different search terms. Specifically, "[t]he USDA has a decentralized FOIA program," and thus "[e]ach agency processes its own FOIA requests and appeals independently." *See* Supp. Scofield Decl. ¶ 12. "As such, the Forest Service, and the agencies under the purview of the OIA's requests, OSEC and the OGC, were treated as separate requests, independent of one another. Because of the Forest Service's decentralized FOIA program, the Rocky Mountain (Region 2) Regional Office and the Washington Office process FOIA requests independently. It is for this reason that different tracking numbers were assigned to

6

each component, and it is why different search terms were used for each FOIA Office." *See id.* Further, Defendant Forest Service confirmed that its use of the search terms was reasonable, as those terms were reasonably used to identify and locate all potentially responsive records. *See* Supp. Scofield Decl. ¶¶ 8, 10, 13. Thus, because the variances in the search terms Defendants used are not "unexplained," but supported by a reasonable analysis, Plaintiff has no support for the proposition that the differences in the search terms render the searches inadequate. *See Tushnet v. Immigr. & Customs Enf't*, 246 F. Supp. 3d 422, 435 (D.D.C. 2017).

### C. FOIA Exemptions

Plaintiff proceeds to attack Defendants' application of FOIA exemptions. Pl.'s Opp. at 18. Specifically, Plaintiff claims that Defendants improperly applied Exemption 5 with respect to the deliberative process privilege, attorney-client privilege, and attorney work product privilege. *Id.* at 18–23.

#### 1.  Exemption 5

##### a.  Deliberative Process Privilege

In regard to the deliberative process privilege, Plaintiff first argues that "[t]he record contains no evidence on the finality of any decision[.]" Pl.'s Opp. at 21–22. Indeed, the records clearly state that "Forest Service has not published a final record of decision with regard to the BAR request and is still likely to consult legal counsel before the release of the decision." SUMF ¶ 16; Enciso Decl. ¶ 18. But the deliberative process privilege still applies, even where no final decision has been made. *See Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 782 (2021) ("What matters is if the agency treats the document as its final view and concludes the deliberative process by which governmental decisions and policies are formulated, giving the document 'real operative effect.'").

7

Next, Plaintiff argues that the Vaughn index provided is not sufficiently clear. Pl.'s Opp. at 22. However, Plaintiff's emphasis on the Vaughn index is mistaken. Although a Vaughn index is a common device used by agencies to meet their burden of proof as to the applicability of an exemption, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the Vaughn index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172–73 (D.C. Cir. 1994)). As demonstrated in the Motion for Summary Judgment, Defendants' declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *CREW*, 478 F. Supp. 2d at 80; Defs.' Mot. at 16–29.

    **b.**  **Attorney-Client Communication Privilege**

With respect to the attorney-client communication privilege, Plaintiff argues, again, that the Vaughn index does not confirm that this privilege applies. Pl.'s Opp. at 23. For the reasons explained above, this is immaterial, as a declaration asserting the necessary information is sufficient. Second, when Plaintiff finally does address Defendants' declaration, it argues in conclusory fashion that the declarations "provide no basis to separate confidential information

8

from counsel's written responses containing neutral, objective analyses of agency regulations that are not privileged." Pl.'s Opp. at 23. However, importantly, the case Plaintiff cites in support of this proposition held that analysis applies only "when officials within an agency [] communicate information from third parties [] to the agency's counsel [] and ask for legal advice[.]" *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, Civ. A. No. 04-1724 (CKK), 2006 U.S. Dist. LEXIS 14389, at *47 (D.D.C. Mar. 20, 2006) (internal quotations omitted). Plaintiff does not identify anywhere in the record where that that situation occurred. *See* Pl.'s Opp. at 23. Further, Defendants explained in their Motion, in detail, why the privilege applies in this case. *See* Defs.' Mot. at 21–22.

Moreover, application of the attorney client privilege does not turn on whether the subject might be characterized as "neutral" or "objective." To the contrary, communications between a government agency counsel and a government client are entitled to attorney-client and work-product privilege protections so long as they "relate to some legal strategy, or to the meaning, requirements, allowances, or prohibitions of the law." *Gen. Elec. Co. v. Johnson*, Civ. A. No. 00-2855 (JDB), 2006 WL 2616187, at *14-15 (D.D.C. Sept. 12, 2006); *accord Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980) (the scope of the privilege is not limited to the litigation context or to specific disputes; rather, it encompasses "all situations in which an attorney's counsel is sought on a legal matter"). The privilege also covers "communications in which the client informs the attorney of facts that the attorney needs to understand the problem and provide legal advice." *FTC v. Boehringer Ingelheim Pharm., Inc.*, 892 F.3d 1264, 1267 (D.C. Cir. 2018); *accord Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (the privilege "rests on the need for the advocate to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out"). Where, as

9

here, at least "*one of* the significant purposes of the attorney-client communication" was obtaining legal advice, the documents are privileged. *Id.* (quoting *Kellogg Brown & Root*, 756 F.3d at 757) (emphasis in original). Thus, despite Plaintiff's critiques, the agencies properly invoked the attorney client privilege.

### c. Attorney Work Product Protections

Finally, Plaintiff attacks Defendants' application of attorney work product protections, and merely states, without providing any examples, that the declarations are insufficient to establish attorney work product for any withheld agency records. Pl.'s Opp. at 24. To the contrary, the declarations specifically state that the information withheld was "prepared by or for a USDA attorney in reasonable anticipation of litigation and reflect the parties' pre-litigation thoughts, potential strategies, and evaluation of matters related to the BAR request as well as other administrative requests or ongoing litigation." SUMF ¶ 20; *see Hickman v. Taylor*, 329 U.S. 495 (1947); *Martin v. Off. of Special Counsel,* 819 F.2d 1181, 1184-87 (D.C. Cir. 1987). This falls squarely within the ambit of the work product doctrine, as the exempt material was prepared "in anticipation of litigation." *See* Fed. R. Civ. P. 26(b)(3)(A). "In this Circuit, we apply the 'because of' test, which asks 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)). As the plain language of the declarations shows, work product protections properly were invoked.

### 2. Exemption 6

Next, Plaintiff claims that Defendants improperly applied Exemption 6. Pl.'s Opp. at 24. Specifically, Plaintiff first argues that "[t]he agency provides generalized and sweeping statement

that do not identify author, sender, and recipient for any withheld record, and it is reasonable to infer that none were "maintained in the human resources office often known as the 'personnel department.'" *Id.* There are two major flaws with this argument. First, Plaintiff relies on *Milner v. Department of Navy*, 562 U.S. 562, 570 (2011), which does not state that the agency must "identify author, sender, and recipient for any withheld record." *See id.* To the contrary, such personal details are not necessary in every case, and where such details would reveal personal information, it may properly be withheld. *See Hopkins v. HUD*, 929 F.2d 81, 88 (2d Cir. 1991) (The "simple invocation of a legitimate public interest . . . cannot itself justify the release of personal information. Rather, a court must first ascertain whether that interest would be served by disclosure."). Further, Plaintiff seeks to focus on *Milner's* language discussing personnel files, which encompasses "human resources," but Plaintiff crucially ignores the fact that Exemption 6 "protects from disclosure personnel and medical files and similar files[.]" Pl.'s Opp. at 24; 5 U.S.C. §552(b)(6). Consequently, Plaintiff's sole focus on whether the records were "maintained in the human resources office often known as the 'personnel department" is misplaced.

Plaintiff's final argument with respect to Exemption 6 is that, even "if there were a recognized privacy interest, the public interest in piecing together a comprehensive picture of the agency activities supports disclosure." Pl.'s Opp. at 25. Plaintiff reaches this erroneous conclusion because it argues that in a separate case, involving a separate FOIA request and different applications of exemption 6, Defendants stated that "citizens' private phone numbers, and similar information, can be connected to publicly available data to form a 'comprehensive picture' of the associated businesses." Pl.'s Opp. at 24–25. However, in the case Plaintiff cites, the Court agreed with Defendants' position that, as a result, the numbers withheld "implicate a greater than de minimis privacy interest." *Telematch, Inc. v. Dep't of Agric.*, Civ. A. No. 19-2372 (TJK),

11

2020 U.S. Dist. LEXIS 223112, at *21 (D.D.C. Nov. 27, 2020). Thus, Plaintiff fails to cite any case in support of its unusual position, and indeed the public does not need to know the particular personal details withheld per Exemption 6 in order to know what the government is "up to." Pl.'s Opp. at 25.

### 3. Waiver of all FOIA Exemptions

Finally, Plaintiff argues that all FOIA exemptions should be deemed waived because Defendants have not provided evidence that any of these documents were kept confidential. *See* Pl.'s Opp. at 25. To the contrary, the record contains numerous statements of confidentiality. *See*, e.g., SUMF ¶ 23 (providing that the release of this information would also harm USDA's ability to communicate confidentially with legal counsel, and that release would harm the Forest Service's officials ability to communicate confidentially). Further, Defendants had provided a supplemental declaration confirming confidentiality. *See* Supp. Enciso Decl. ¶ 14; Supp. Scofield Decl. ¶ 15. Thus, Plaintiff has not provided any support for the argument that the FOIA exemptions should be waived. In any event, the propriety of the invocation of a FOIA exemption does not turn on whether a record was kept confidential, and, to the extent Plaintiff instead intends to argue that some of the exempt information should have been released here because it has previously been publicly disclosed, it is the Plaintiff's burden to demonstrate such prior disclosure, and that Plaintiff has not done.

### D. Form and Format Violations

Finally, Plaintiff argues that Defendants did not comply with the form and format requirements of FOIA. Pl.'s Opp. at 26. Specifically, Plaintiff asserts that it requested "pdf copies of the requested records on a discreet physical electronic media (on a flash or jump drive, for example)," but that "[n]one of the releases complied with the requested form and format." *Id.* at 27.

12

However, the record is clear that with respect to format, Plaintiff received the records as requested: in PDF files. *See* Supp. Scofield Decl. ¶ 16; Supp. Enciso Decl. ¶ 15. Thus, the only issue is with respect to means or method of conveying those files to Plaintiff—USDA's decision to use internet postings and email attachments in lieu of sending physical media through the mails or other delivery service.

While Defendants agree they did not provide Plaintiff with the records on the type of media Plaintiff requested, the law contains no such requirement. Instead, USDA regulations and FOIA itself only address the "form or format" of released records, not the method or means of delivering a production to a requester. 7 C.F.R. § 1.5(d); *see generally Aguiar v. DEA*, 334 F. Supp. 3d 130, 143 (D.D.C. 2018) (FOIA's "forms or formats" provision was crafted with the distinction between "electronic-versus-paper" in mind). Plaintiff cites nothing in FOIA or USDA's regulations that require the agency to produce records using the delivery means specified by a requester.

Moreover, the facts are clear that the records at issue here were not readily producible via the means that Plaintiff requested as the days of using external electronic media for regularly transacting business have been replaced by website downloads and email attachments. *See* Supp. Scofield Decl. ¶ 16 (stating that the form used "is the most efficient manner in which to provide responsive documents," and that "[p]roviding responsive records on 'discreet electronic media,' such as on a flash or jump drive as suggested by the requester, is a very outdated method for providing responsive documents" which is made even more difficult "as a result of pandemic precautions") Supp. Enciso Decl. ¶ 15 (stating that "the OIA provided the records as an email attachment which is the most efficient manner in which to provide responsive documents. Providing responsive records on 'discreet electronic media,' such as a flash or jump drive as

13

preferred by the requester, is a method the OIA no longer utilizes, especially in light of the Coronavirus pandemic and telework policies in place.").

Ultimately, Plaintiff received the production in the requested format (PDF files), and it does not contend that it was unable to access those PDF files using the delivery means used by USDA. As such, the Court should reject Plaintiff's "forms or formats" argument.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' Motion, the USDA and Forest Service respectfully request that the Court grant Defendants' Motion for Summary Judgment.

Dated: April 15, 2022
       Washington, DC

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney

                BRIAN P. HUDAK
                Acting Chief, Civil Division

By:    /s/ *Blake A. Weiner*
                BLAKE A. WEINER
                Assistant United States Attorney
                555 Fourth Street, NW
                Washington, DC 20530
                (202) 803-1604

                *Attorneys for the United States of America*