## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILDERNESS WORKSHOP,

                  Plaintiff,

                  v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, et al.,

                  Defendants.

Civil Action No. 21-2108 (JMC)

## <u>MEMORANDUM OPINION</u>

Wilderness Workshop brought this action against the United States Department of Agriculture (USDA) and the United States Forest Service for failing to provide records in response to a request for information under the Freedom of Information Act (FOIA), 5 U.S.C. § 552.[1] The Parties have cross-moved for summary judgment. ECF 19; ECF 22. The Court agrees with Defendants that all records withheld pursuant to FOIA's Exemption 6 and the attorney-client and work-product privileges (as contemplated by FOIA's Exemption 5) were properly withheld. The Court also agrees with Defendants that they produced the records in an appropriate format. However, the Court finds that Defendants have failed to justify their withholdings under the deliberative process privilege, and that the Forest Service has not carried its burden to establish that it conducted an adequate search.

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

Based on those findings, the Court partially grants and partially denies Defendants' Motion for Summary Judgment. However, in lieu of granting Plaintiffs' Cross-Motion as to the adequacy of the Forest Service's search,[2] the Court provides Defendants the opportunity to submit revised and/or supplemental declarations and Vaughn indices to correct the shortcomings described below.

## I.   BACKGROUND

The following facts are not in dispute. Berlaimont Estates is the owner of a 680-acre parcel of land that is surrounded by the White River National Forest. ECF 21-1 at 6. Some time prior to 2016, Berlaimont proposed a plan to improve, construct, and maintain roads to provide year-round, motorized access to a development of nineteen single-family residences on the parcel. *Id.* at 3, 6. Following a multi-year process, including the solicitation and review of hundreds of public comments, a Final Environmental Impact Statement was produced in September 2020. *Id.* at 1, 7–8. As of the date the Parties filed their Cross-Motions for Summary Judgment, the agency had not yet reached a final decision as to Berlaimont's proposal. ECF 24-3 ¶ 4.

On September 24, 2020, a nonprofit organization called Wilderness Workshop submitted a FOIA request to the USDA, requesting certain records related to the evaluation of the Berlaimont project.[3] ECF 19-4. The 2020 request described the relevant records as follows:

> [E]nvironmental analysis, letters, consultations, comments, meeting notes, phone call notes, handwritten and electronic mail messages, text messages, social media posts, maps, draft and final documents, inter- and intra-agency consultations, photos, GIS data, GPS data, correspondence, records of communications that were created, obtained, generated, modified, or acquired by offices within the U.S. Department of Agriculture (including [the Office of General Counsel], the U.S. Forest Service, and the Undersecretary's Office), concerning, relating, or pertaining

---

[2] Plaintiff cross-moved for summary judgment on only two issues: the adequacy of the search and the format of the production. *See* ECF 22 at 3, 5.

[3] The 2020 request was not the first FOIA request made by Wilderness Workshop, and the request specifically excluded records that had been produced pursuant to earlier requests. ECF 19-4 at 2 & n.1.

to the Berlaimont Estates LLC request for expanded access to the Edwards Overlook Parcel within the White River National Forest.

*Id.* at 2. In the 2020 request, Wilderness Workshop not only specified what records it sought, but also where it wanted the agency to search. The opening paragraph of the request stated that Wilderness Workshop "specifically request[s] that the Office of General Counsel (OGC) and the Undersecretary's Office are searched for responsive records." *Id.* Later in the request, Wilderness Workshop also included the following language:

> Responsive records may be maintained in various levels of the agency's organizational structure, including [Office of General Counsel], the Undersecretary's Office, the U.S. Forest Service's Rocky Mountain Regional Office and the Office of the Chief of the U.S. Forest Service, and the White River National Forest and Districts within the White River National Forest.

*Id.* at 3. Finally, Wilderness Workshop requested that the USDA produce the records in the form of searchable PDFs, which would be stored and transmitted to Wilderness Workshop on a discrete electronic media such as "a flash or jump drive." *Id.*

The day after Wilderness Workshop submitted its request, the USDA's Office of Information Affairs (OIA)[4] responded via email. *See* ECF 19-5 at 1. In that email, the OIA informed Wilderness Workshop that its request would be broken into three parts, each of which would be assigned a separate tracking number. *Id.* The breakdown would be as follows: (1) the request for records from the Office of the General Counsel, (2) the request for records from the Office of the Secretary, and (3) a separate search that would be processed concurrently by the Forest Service. *Id.* On October 22, 2020, the White River National Forest Supervisor's Office sent a partial response to Wilderness Workshop, including a production of responsive records. ECF

---

[4] At the time, USDA's Office of Information Affairs (OIA) was known as the Departmental FOIA Office. *See* ECF 19-5 at 1. For the sake of clarity, the Court refers to the OIA by its current name throughout this Opinion.

21-2. The record also suggests that on November 14, 2020, the OIA sent a response and production concerning the part of the request dealing with the Office of the Secretary. ECF 19-5 at 1 (referencing a prior "final response").[5]

On August 5, 2021, nearly a year after the submission of the 2020 request, Wilderness Workshop filed this suit against the USDA and the Forest Service, alleging that the "[Forest Service's] Washington Office and the [Office of the General Counsel]" were in violation of FOIA because they had not responded to the 2020 request with a final determination, released any of the requested materials, or provided an estimate of when they would do so. ECF 1 ¶¶ 2, 48. In the months that followed, those two agencies issued the following responses to the underlying request, which they contend are sufficient to end the case: First, in October 2021, the Forest Service's Washington Office sent its response to the request, reporting that it had identified 171 pages of responsive documents and producing all of those pages in whole or in part. ECF 19-8 ¶ 12. Second, in November 2021, the OIA sent a "final response" to the portion of the request involving the Office of the General Counsel. ECF 19-5. That response stated that the agency had conducted both electronic and manual searches for records, locating 105 pages of responsive documents. *Id.* at 2. The OIA's letter was accompanied by 66 pages of responsive records, *id.* at 4, with the remaining 39 pages withheld pursuant to FOIA Exemption 5, *id.* at 2. Third and finally, the OIA and Forest Service issued supplemental responses on January 7, 2022, and February 3, 2022, respectively,

_____

[5] Although the November 2020 response is not in the record, Wilderness Workshop's Complaint appears to acknowledge its existence by omission. *See* ECF 1 ¶ 2 (alleging that the "request was copied to . . . the Office of General Counsel ('OGC'), the USDA Secretary's Office, the USFS's Washington Office, and the USFS's Regional Office in Colorado," but alleging only that "USFS's Washington Office and the OGC still have not responded with a FOIA determination or release of any requested materials"). The Court further notes that Wilderness Workshop does not appear to contest that they received those materials in either its opposition to Defendants' Motion for Summary Judgment, *see generally* ECF 21, or its own Cross-Motion, *see generally* ECF 22.

releasing some information that had previously been redacted under FOIA Exemptions 5 and 6. ECF 19-3 ¶ 7; ECF 19-8 ¶ 13.

Shortly after that last response, Defendants moved for summary judgment on the basis that they had "met their burden under FOIA with respect to the records released." ECF 19. The agencies supported the motion with two sworn declarations: the first from Melanie Enciso, a Government Information Specialist at the OIA, ECF 19-3 ¶ 1, and the second from Margaret Scofield, who worked as Assistant Director of FOIA at the Forest Service, ECF 19-8 ¶ 1. Both declarants described the search for records in response to the request, ECF 19-3 ¶¶ 8–11; ECF 19-8 ¶¶ 8–11, averring that the searches "were reasonably calculated to uncover and identify all records potentially responsive to Plaintiff's FOIA request that were within the custody, control, or possession of" the agency, ECF 19-3 ¶ 11; ECF 19-8 ¶ 11. Both declarants also explained why certain materials were withheld pursuant to FOIA Exemptions 5 and 6. ECF 19-3 ¶¶ 13–33; ECF 19-8 ¶¶ 14–29. Finally, Defendants submitted Vaughn indices[6] in support of both declarations, providing more detail about the records and why they were withheld. ECF 19-7; ECF 19-9.

Wilderness Workshop filed a Cross-Motion for Summary Judgment. ECF 22. In that motion, Wilderness Workshop argues that Defendants have neither conducted an adequate search for responsive records, nor transmitted the records in a suitable format. Wilderness Workshop therefore requests the Court to order Defendants to undertake a new search for responsive records, due to what it argues were several deficiencies in the searches that were conducted. *Id.* at 6. In

---

[6] A Vaughn index is a standardized document "created by an agency to assist courts and FOIA requesters when the agency claims that responsive documents are exempt from disclosure." *Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 190 (D.C. Cir. 2007). The index is meant to "describe with reasonable specificity the material withheld" and justify why each responsive document is exempt from disclosure under FOIA. *See King v. DOJ*, 830 F.2d 210, 221 (D.C. Cir. 1987). When creating a Vaughn index, "[a] withholding agency must describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information." *Id.* at 223–24 (emphasis omitted).

addition, Wilderness Workshop requests the Court to order Defendants to transmit all records on discrete electronic media rather than by email or through a website. *Id.* at 5.

## II.    LEGAL STANDARD

### A.  Summary Judgment

FOIA cases are typically decided at summary judgment. *See Laverpool v. Dep't of Hous. & Urban Dev.*, 315 F. Supp. 3d 388, 390 (D.D.C. 2018). A court will grant a summary judgment motion when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, it is the defending agency's burden to prove it has complied with its obligations under the statute. *DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). To satisfy that burden, the "agency must prove that each document that falls within the class requested either has been produced, is unidentifiable[,] or is wholly exempt from the Act's inspection requirements." *Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980). A court may accept as true any uncontested factual assertions in the moving party's affidavits or attachments, provided that the nonmoving party has "fair notice of the requirements of the summary judgment rule" and the "consequences of failing to respond" to a summary judgment motion, as well as a "reasonable opportunity to submit" their own evidence in response. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

"When parties file cross-motions for summary judgment, each motion is viewed separately, in the light most favorable to the non-moving party, with the court determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 267 F. Supp. 3d 229, 236 (D.D.C. 2017).

### B.  Adequacy of Search

Under FOIA, agencies have "an obligation . . . to conduct an adequate search for responsive records." *Edelman v. SEC*, 172 F. Supp. 3d 133, 144 (D.D.C. 2016). Or, to put it

differently, "[a]n inadequate search for records constitutes an improper withholding" under the statute. *Schoenman v. FBI*, 764 F. Supp. 2d 40, 45 (D.D.C. 2011). Whether a search is adequate is not determined by its results, but by the means used to conduct it. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

In assessing the adequacy of an agency's search, "the court may rely on a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Mobley v. CIA*, 806 F.3d 568, 580–81 (D.C. Cir. 2015). Such affidavits are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Per Rule 56(c)(4), the agency's affidavit must be based on personal knowledge. *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981). "A declarant in a FOIA case satisfies the personal knowledge requirement . . . if in his declaration, he attests to his personal knowledge of the procedures used in handling a FOIA request and his familiarity with the documents in question." *Prop. of the People, Inc. v. DOJ*, 405 F. Supp. 3d 99, 125 (D.D.C. 2019); *see also Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 47 (D.D.C. 2021) (the personal knowledge requirement is "met by an affiant who reviews the business records of the organization . . . and who testifies on the basis of information acquired through the performance of his or her official duties."). In a FOIA case, information "acquired through the performance of . . . official duties" includes information obtained through conversations with other agency employees. *Barnard v. DHS*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) (rejecting an argument that declarations contained inadmissible hearsay because "declarants were told certain information" by other agency employees).

### C.  Adequacy of Disclosures

Although "FOIA calls for broad disclosure of Government records," *Porup v. CIA*, 997 F.3d 1224, 1235 (D.C. Cir. 2021), an agency may withhold responsive materials under any one of the nine exemptions defined in 5 U.S.C. § 552(b). *Id.* To do so, an agency must demonstrate both (1) "that the record falls within a FOIA exemption," and (2) "that the agency reasonably foresees that disclosure would harm an interest protected by the exemption." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). An agency can show that an exemption applies by "submitting affidavits that [1] describe the justifications for nondisclosure with reasonably specific detail, [2] demonstrate that the information withheld logically falls within the claimed exemption," and (3) which are not contradicted by the record or by evidence of bad faith. *Citizens for Resp. & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). If it chooses, an agency may supplement such an affidavit with a Vaughn index, which allows the agency to provide more granular descriptions of the withheld material to facilitate litigation, without exposing the information itself.[7] *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006).

## III.   ANALYSIS

The Court's analysis proceeds in three parts. First, the Court finds that the OIA's search for records was adequate, but that the Forest Service has failed to establish that it conducted an adequate search. Second, the Court concludes that the agencies' withholdings under the attorney-client privilege, the work-product privilege, and Exemption 6 were proper, but that Defendants

---

[7] *See supra* note 6.

have not carried their burden to justify their withholdings under the deliberative process privilege.

Finally, the Court finds that Defendants transmitted the records in an appropriate format.

### A. The OIA's search for responsive records was adequate, but the Forest Service has not met its burden to demonstrate that it conducted an adequate search.

As an initial matter, the Court considers and rejects Wilderness Workshop's argument that

Defendants have not actually issued a final determination regarding the 2020 request. *See* ECF 21

at 10–13. In Wilderness Workshop's view, no final determination has been made because (a) the

agencies' determinations were not sent until after the Complaint was filed in this case, and (b)

those determinations were inadequate. *Id*. The Court disagrees. It is not material that the

determinations were sent after the date of the Complaint; they were sent prior to the Motion for

Summary Judgment. *Compare* ECF 19-3 ¶¶ 6–7 (responses on Nov. 4, 2021, and Jan. 7, 2022),

*and* ECF 19-8 ¶¶ 12–13 (responses on Oct. 19, 2021, and Feb. 3, 2022), *with* ECF 19 (filed on

Feb. 14, 2022). As for whether the determinations were adequate, that question goes to the

sufficiency of the responses, not their finality. The Court turns to that question now.

Defendants have submitted two sworn declarations in support of their contention that they

conducted an adequate search. The first is from Melanie Enciso, who works as a Government

Information Specialist in the FOIA division at the OIA.[8] ECF 19-3 ¶ 1. The Enciso Declaration

---

[8] In its Response to the agencies' Statement of Facts, Wilderness Workshop makes much of the fact that Ms. Enciso did not begin in that position until November 2021. Wilderness Workshop argues that the Court may not rely on the Enciso Declaration because Ms. Enciso cannot have personal knowledge of searches that took place before she started in her position, and that the declaration therefore contains inadmissible hearsay. *See* ECF 21-4 ¶¶ 4–5. Wilderness Workshop also argues that the Scofield Declaration contains inadmissible hearsay. *See id.* ¶¶ 9–10. Those objections are unavailing, however, as both declarants aver that the statements in their declarations are based on information acquired through the performance of official duties. *See* ECF 19-3 ¶ 3 ("I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties, including my review of the agency files and my discussions with colleagues . . . who are also familiar with the facts at issue in this litigation."); ECF 19-8 ¶ 3 ("I make the statements herein on the basis of my own personal knowledge, my review of the agency records subject to the FOIA requests at issue in this case, and my discussions with . . . colleagues who are likewise familiar with the FOIA requests and agency records at issue in this case."). As other courts in this jurisdiction have previously stated, that is sufficient. *See, e.g.*, *Ecological Rts. Found.*, 541 F. Supp. 3d at 47.

details a two-prong search led by the OIA in response to the portion of the 2020 request involving the Office of the General Counsel. *Id.* ¶¶ 4, 7, 10. In the first prong, the OIA worked with its telecommunications provider to conduct a search for responsive electronic communications, including email, Skype, and Teams messages. *Id.* ¶ 8. To identify the correct custodians for the search and the appropriate search terms, the OIA consulted with the attorney who led the review for administrative actions in the region that included Berlaimont. *Id.* ¶ 9. The OIA identified three custodians—all of whom were attorneys at the Office of the General Counsel—and sixteen search terms. *Id.* In addition to the electronic search, the OIA instructed the three identified custodians to conduct manual searches of their laptops, local drives, and backup servers, as well as any hard-copy records in their offices, in search of files, text messages, or other electronic records that may not have been uncovered by the electronic search. *Id.* ¶ 10. The electronic search identified 70 pages of records, and the manual searches an additional 35. *Id*. ¶¶ 9–10. Enciso avers that "[t]here are no other areas to search that would lead to responsive records," and that "the searches performed were reasonably calculated to uncover and identify all records potentially responsive to Plaintiff's FOIA request that were within the custody, control, or possession of USDA." *Id.* ¶ 11.

The second declaration submitted by Defendants comes from Margaret Scofield, the Assistant Director, FOIA, at the Forest Service in Washington, D.C. ECF 19-8 ¶ 1. Like the Enciso Declaration, the Scofield Declaration describes "two distinct search efforts" that were made in response to the 2020 request. *Id.* ¶ 8. The first consisted of a "request to the agency's eDiscovery and Enterprise Content Management team" to search the emails of nine "Washington Office custodians" who were involved in the Berlaimont project. *Id.* The keywords for that search were "Berlaimont" and "Edwards Overlook Parcel." *Id.* The second effort consisted of a manual search conducted by those same nine custodians, each of whom was instructed to look through their paper

and electronic files for any documents that fit the description in the request. *Id.* ¶ 9. Together, those searches produced 171 pages of responsive records. *Id.* ¶ 12. Scofield avers that "[t]here are no additional Washington Office program areas to search that would reasonably be expected to lead to responsive records," and that "[a]ll files likely to contain responsive materials were searched." *Id.* ¶ 11. She further avers that "the searches performed were reasonably calculated to uncover and identify all records potentially responsive to Plaintiff's FOIA request that were within the custody, control, or possession of Forest Service." *Id.* The Court presumes that both the Enciso and Scofield Declarations were submitted in good faith. *See SafeCard Servs.*, 926 F.2d at 1200. Moreover, the Court assumes the truth of any unrebutted factual allegations therein. *See Neal*, 963 F.2d at 456.

Wilderness Workshop makes three arguments that Defendants' search was inadequate. First, it argues that the USDA's "segmented approach" to the search was inappropriate because it precluded a comprehensive review of all the documents, which might have informed the agencies' decision whether to refine or expand the search. ECF 21 at 12; ECF 22 at 3. Second, Wilderness Workshop argues that the search was inadequate because it did not look for documents in all the departments and locations that were listed in the request. ECF 21 at 14–15; ECF 22 at 4. Finally, Wilderness Workshop contends that the declarations do not sufficiently describe the methodology of the search, including by providing details as to the persons who conducted the search or the search terms that were selected by the agencies. ECF 21 at 16–17. The Court is unpersuaded by the first two arguments but is partially persuaded by the third. The Court finds that the declaration submitted by the Forest Service fails to sufficiently describe the methodology of its search.

In support of its first argument—that Defendants' decision to break the 2020 request into three parts was impermissible—Wilderness Workshop cites only to the general proposition that the reasonableness of a FOIA search is determined not according to the information known at the

beginning of a search, but at the end. *See Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999). Wilderness Workshop extrapolates from that proposition that the agency was required, at the end of it search, to collect and consider "all the documents" from the search and make a single, "final determination on the entire FOIA Request." ECF 21 at 12. The Court disagrees. As explained in a supplemental declaration from Margaret Scofield, "[t]he USDA has a decentralized FOIA program" in which "each agency processes its own FOIA requests and appeals independently." ECF 24-3 ¶ 12. That is why the requests to the OIA and Forest Service were assigned different tracking numbers, and why the Forest Service pursued separate searches of the Washington and regional offices. *Id*. Wilderness Workshop points to no statutory language or precedent to suggest that the USDA's standard practice for processing FOIA requests is unlawful, nor does it provide anything other than "purely speculative claims" that a hypothetical consolidated review would have led to an expanded search. *SafeCard Servs.*, 926 F.2d at 1200 (D.C. Cir. 1991). Such speculation is not enough.

The Court also disagrees with Wilderness Workshop's second argument—that Defendants were obligated to search for documents in each and every location named in the 2020 request. Although agencies have an affirmative duty to "follow through on obvious leads to discover requested documents," *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), that rule appears to apply to "positive indications of overlooked materials" in the record, *id.* at 327, such as when the produced documents themselves point to another location, *Campbell*, 164 F.3d at 28, or the agency's correspondence reveals that they had reason to believe there was another location where documents could be found, *Valencia-Lucena*, 180 F.3d at 327. In any event, Wilderness Workshop cites to no authority to suggest that the requester's mere intuition that documents might be found in a particular location is the kind of "obvious lead" that obligates the

agency to search in that location. Here, both the Enciso and Scofield Declarations state that the searches conducted by the OIA and Forest Service were reasonably calculated to include all the locations where responsive documents could be found. Unlike in *Campbell* and *Valencia-Lucena*, Wilderness Workshop points to nothing in the record that contradicts that claim.

As for Wilderness Workshop's third argument—that Defendants' declarations do not adequately describe the methodology of the searches—the Court finds that the OIA has established that it conducted an adequate search, but the Forest Service has not. Both declarations describe a process in which likely custodians of responsive records were identified, and those records searched by both electronic and non-electronic means. *See* ECF 19-3 ¶ 9–10; ECF 24-3 ¶ 10–11 (supplemental declaration). Both declarations aver that the agencies worked with experts to perform the electronic searches, and both describe the specific search terms that were used.[9] *See* ECF 19-3 ¶ 9; ECF 19-8 ¶ 8. The two declarations differ, however, in the amount of detail they provide as to the identity of the custodians whose records were searched. The OIA's declaration describes the custodians both by occupation and name. *See* ECF 19-3 ¶ 9. The Forest Service's declaration, on the other hand, states only that it searched the records of nine custodians who were "identified as being engaged in the Berlaimont Estates Access Route project." *See* ECF 19-8 ¶ 8; *see also* ECF 24-3 ¶ 8 (conclusorily asserting that there was "no need to consult any additional custodians," without providing any information as to the custodians' identities or roles). That is not enough detail for either the Court or Plaintiff to evaluate the reasonableness of the search. *See*

---

[9] The OIA and the Forest Service did not use the same search terms as one another. *Compare* ECF 19-3 at ¶ 9, *with* ECF 19-8 ¶ 8. That difference does not mean that the search for responsive records was deficient, however. Neither set of search terms was facially deficient nor were these the kind of "wide and unexplained variances" that would draw the reasonableness of the search into question. *Tushnet v. U.S. Immigr. & Customs Enf't*, 246 F. Supp. 3d 422, 434–35 (D.D.C. 2017) (ordering the agency to perform a new search where twenty-six field offices conducted searches using wildly different parameters, some of which did not even include the search terms specifically called out in the underlying request).

*Mobley*, 806 F.3d at 580–81 (requiring a "reasonably detailed affidavit"). Even granting the Scofield declaration a presumption of good faith, the Court finds that it does not carry the Forest Service's burden to show that its search was "reasonably calculated to uncover and identify all records potentially responsive to Plaintiff's FOIA request that were within the custody, control, or possession" of each agency. ECF 19-8 ¶ 11; *see also Mobley*, 806 F.3d at 580–81.

The Court stops short of ordering the Forest Service to perform a new search for records, however. Instead, the Court orders the Forest Service to submit a supplemental declaration, describing in more detail the process it used to identify the custodians whose records would be searched, as well as the identities (or at least the roles) of the custodians that were identified. *Cf. Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018).

### B. The agencies' disclosure of responsive records was adequate as to all records, except for any materials withheld solely under the deliberative process privilege.

Next, the Court considers Defendants' Motion for Summary Judgment as to the adequacy of its disclosures. Defendants have invoked two FOIA exemptions to justify its withholdings: Exemption 5 (inter- or intra-agency memorandums or letters that would be unavailable in litigation), and Exemption 6 (personal privacy). The Court considers them in turn.

#### 1. *FOIA Exemption 5*

FOIA's Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 incorporates the deliberative process privilege, the attorney-client privilege, and the work-product privilege. *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). All the Exemption 5 withholdings in this case were withheld pursuant to one or more of those three privileges.

The Court first considers those records that were withheld exclusively under the deliberative process privilege. Those records include all Exemption 5 withholdings by the Forest Service, *see generally* ECF 19-9, and one withholding by the OIA, *see* ECF 19-7 at 11 (Bates No. 78). The Court will then consider the remaining Exemption 5 withholdings, all of which were withheld (at least in part) pursuant to the attorney-client and/or work-product privileges. Those records include all of the OIA's Exemption 5 withholdings, with the single exception identified above. The Court grants Defendants' Motion only regarding the latter category of records.

(a) The deliberative process privilege

The deliberative process privilege facilitates effective agency decisionmaking by "protect[ing] debate and candid consideration of alternatives within an agency." *Machado Amadis*, 971 F.3d at 371. To be covered by the deliberative process privilege, "a document must be [both] predecisional and deliberative." *Id.* at 370. As such, "the agency must provide three basic pieces of information in order for the deliberative-process privilege to apply: (1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 189 (D.D.C. 2013) (citing *Senate of P.R. v. DOJ*, 823 F.2d 574, 585–86 (D.C. Cir. 1987)).

Once an agency has shown that the deliberative process privilege applies, it must also articulate how the release of the relevant record would harm the interests the privilege was meant to protect. *Machado Amadis*, 971 F.3d at 370. It is not enough for an agency to provide "[a] perfunctory statement that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information." *Reps. Comm. for Freedom of the Press v. FBI (Reporters Comm. I)*, 3 F.4th 350, 370 (D.C. Cir. 2021). Rather, the agency must

articulate "a focused and concrete" explanation of "why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id*. There are, however, two provisos to that rule. First, an agency need not provide a separate explanation for each record; it may take a "categorical approach," so long as the categories it defines are specific enough so that the explanation provided would "characteristically" apply to each document therein. *Rosenberg*, 342 F. Supp. 3d at 78–79; *see also Reporters Comm. I*, 3 F.4th at 369. Second, in the absence of a focused and concrete agency explanation, the Court may nonetheless find that the foreseeable harm requirement is satisfied based on the "context and purpose" of the withheld information. *Reporters Comm. I*, 3 F.4th at 372; *see also Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot. (Reporters Comm. II)*, 567 F. Supp. 3d 97, 110 (D.D.C. 2021).

Here, the declarations and Vaughn indices submitted by the agencies do not contain enough information for the Court to conclude that the deliberative process privilege applies. *See Senate of P.R.*, 823 F.2d at 585–86. Of the six entries in the Forest Service's Vaughn index that relate to the deliberative process privilege, none identifies with any particularity which individuals were involved in the communications, or what (if any) decisionmaking authority is vested in those individuals. *See* ECF 19-9 at 1–4. That alone renders the agency's explanation insufficient to establish that the deliberative process privilege applies. *See Senate of P.R.*, 823 F.2d at 585–86; *see also Nat'l Sec. Couns.*, 960 F. Supp. 2d at 190–91. The Court further notes that the first three entries of the Forest Services' Vaughn index consist entirely of identical boilerplate language, which fails to explain what role the withheld records played in the deliberative process, or even to which final decision the records relate. *See* ECF 19-9 at 1–4. Generalized descriptions like "[i]ntra-agency communications that include discussions about Berlaimont and other projects in

development," *id.* at 1, are insufficient because they provide no insight into the actual role of the communications in a decisional process, or the decisionmaking authority vested in the communicants. *See Nat'l Sec. Couns.*, 960 F. Supp. 2d at 189 ("[T]he need to describe each withheld document" under the deliberative process privilege "is particularly acute because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process."). As for the relevant line in the OIA's Vaughn index, *see* ECF 19-7 at 11, the Court concludes that entry is also deficient. It states only that the withheld emails were communications amongst "FS employees" that "reflect the development of the USDA's response in the FMPA[10] administrative action." *Id.* at 11–12. That is not enough for the Court to understand either the role of the communications in the deliberative process or the decisionmaking authority vested in the communicants. *See Nat'l Sec. Couns.*, 960 F. Supp. 2d at 189.

Moreover, even assuming that the withheld materials are the type of materials that are protected by the deliberative process privilege, the agencies fail to articulate a concrete foreseeable harm that would result from their release. Although the Vaughn indices submitted by the OIA and the Forest Service include what purports to be a record-by-record articulation of the foreseeable harm that would result from disclosure, those explanations consist overwhelmingly of boilerplate language, simply rehashing the general purposes of the privilege without any connection to the specific information in the withheld records. *See, e.g.*, ECF 19-9 at 1 ("If these predecisional, deliberative documents are released to the public, [agency] employees would be much more cautious in their discussions with each other, and in candidly discussing and providing all pertinent information and viewpoints in a timely manner to agency decision-makers. This lack of candor

---

[10] FMPA stands for Filoha Meadows Public Access, which was an administrative action taken by the agency that was unrelated to the Berlaimont Project. *See* ECF 19-7 at 9.

would also seriously impair the [agency's] ability to engage in forthright, internal discussions necessary for efficient and proper agency decision-making."); *id.* at 2–4 (same); ECF 19-7 at 11–12 (same, with minor differences). Indeed, none of the Vaughn entries for the records that were withheld exclusively under the deliberative process privilege include *any* additional explanation of what harm would result from the disclosure of that specific record. That kind of "cookie-cutter" approach to the foreseeable harm requirement falls short. *Reporters Comm. I*, 3 F.4th at 371.

The Court finds that Defendants have not justified their deliberative process withholdings. The agencies' Motion for Summary Judgment is therefore denied as to all records that were withheld exclusively under the deliberative process privilege.

(b) The attorney-client and work-product privileges

The attorney-client privilege "protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services," *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998), including "communications between government attorneys and client agencies or departments," *id.* at 1269. The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The attorney-client privilege "is not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Coastal States v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). The privilege does not protect communications in which an "attorney conveys to his client facts acquired from other persons or sources." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). Nor does it protect the facts themselves, which might be contained in a privileged communication but are discoverable by other

means. *Upjohn*, 449 U.S. at 395–96. Finally, the privilege applies only to confidential communications; if an otherwise-protected communication is subsequently disclosed to a third party—even inadvertently—the privilege is waived not only as to that specific communication, but also as "to all other communications relating to the same subject matter." *In re Sealed Case*, 877 F.2d 976, 980–81 (D.C. Cir. 1989).

The work-product privilege applies to any document that "can fairly be said to have been prepared or obtained" by an attorney "because of the prospect of litigation." *Nat'l Ass'n of Crim. Def. Laws. v. DOJ*, 844 F.3d 246, 251 (D.C. Cir. 2016). The work-product privilege serves to protect "the integrity of the adversary trial process itself . . . by providing a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Id.* For the work-product privilege to apply, a document must (a) have been prepared or obtained by an attorney, (b) in anticipation of litigation that (c) the attorney had the objectively reasonable belief was a real possibility. *Id*. There is no requirement that the anticipated litigation actually materializes. *Frank LLP v. Consumer Fin. Prot. Bureau*, 288 F. Supp. 3d 46, 54 (D.D.C. 2017) (citing *FTC v. Grolier Inc*., 462 U.S. 19, 28 (1983)). The work-product privilege protects not only factual materials prepared in anticipation of litigation, but also an attorney's "mental impressions, conclusions, opinions, or legal theories." *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997).

Although the D.C. Circuit has expounded upon the relationship between the foreseeable harm requirement and the deliberative process privilege, the relationship between foreseeable harm and the attorney-client and work-product privileges remains largely undefined. To be sure, the statute is clear that the foreseeable harm requirement applies to all the Exemption 5 privileges. *See Reporters Comm. II*, 567 F. Supp. 3d at 120. That said, another court in this jurisdiction—

focusing largely on the "prominent and sacrosanct" nature of the attorney-client relationship—has suggested that, in the case of the attorney-client and work-product privileges, "for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated," an agency may not need to provide as much information to satisfy the foreseeable harm requirement. *Id.* The Court agrees. Although FOIA requires that an agency provide a "non-generalized explanation of the foreseeable harm that would result from disclosure" of materials protected by the attorney-client privilege, establishing the privilege applies "will go a long way" towards satisfying that burden. *Id.* at 124. Also, as with the deliberative process privilege, the Court finds that it may find that the foreseeable harm requirement is satisfied—even in the absence of an agency explanation—based on the "context and purpose" of the withheld information. *Reporters Comm. I*, 3 F.4th at 372; *see also Reporters Comm. II*, 567 F. Supp. 3d at 110.

Here, the Court concludes that the Declarations and Vaughn indices submitted by the agencies include enough information to establish that the relevant records are covered by the attorney-client and/or work-product privileges. The records that were withheld under those privileges include attorneys' comments on draft documents, as well as emails between agency employees and agency attorneys. *See generally* ECF 19-7. Each entry in the Vaughn index avers that the relevant communications were for the purpose of obtaining legal advice, and that they were confidential. *See, e.g.*, *id.* at 3–4. The entries that invoke the work-product privilege further state that the attorneys' work-product was produced in anticipation of litigation involving the Berlaimont project. *See, e.g.*, *id.* at 2. Wilderness Workshop does not challenge any specific withholding under those privileges. Nor does it provide any evidence to rebut the agencies' declarations. *See* ECF 21 at 20–21. Finally, Wilderness Workshop cites to no authority in support of its argument that an agency is required to provide additional evidence that it protected the

relevant records from disclosure that would result in waiver. *Id.* If Wilderness Workshop wished to argue that the privilege had been waived with regard to any of the withheld documents, it needed to produce some evidence to suggest that such waiver occurred.

As for foreseeable harm, the Court is permitted to consider context, even in the absence of a specific agency explanation. In this case, it is a matter of public record that the agency's decision on the Berlaimont project—which was still in process when this lawsuit was filed—has since become final. The Court is also aware that Wilderness Workshop has filed suit challenging that decision under the APA. *See* No. 23-cv-678 (JMC) (D.D.C.). As such, should the Court order the release of any materials that would otherwise be encompassed by the attorney-client and/or work-product privileges, that would permit Wilderness Workshop to circumvent the privileges that would protect those materials in actually-pending litigation. Considering that context, the Court is convinced that the disclosure of the agencies' attorney-client and work-product withholdings would harm the interests those privileges were intended to protect. The Court further notes that— should Wilderness Workshop believe that any individual record withheld in this case is not in fact privileged—it is free to request those documents in discovery in the other case, and to litigate the matter there.

In summary, the agencies' Motion for Summary Judgment is granted as to all materials that were withheld under the attorney-client and/or work-product privileges.

### 2. FOIA Exemption 6

FOIA Exemption 6 provides that the disclosure requirements of FOIA do not apply to "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Despite that statutory language, an agency's decision to withhold information under Exemption 6 does not "turn upon the label of the file which contains the damaging information." *U.S. Dep't of State v. Washington Post Co.*,

456 U.S. 595, 601 (1982). Indeed, in this jurisdiction Exemption 6 applies not only to "files," but to any bit of personal information, such as a name or address, the release of which would "create[] a palpable threat to privacy." *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987). To determine whether an agency has appropriately withheld such information, the Court "must balance the private interest involved (namely, the individual's right of privacy) against the public interest (namely, the basic purpose of [FOIA], which is to open agency action to the light of public scrutiny)." *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005).

Here, Defendants invoked Exemption 6 to withhold employee leave and vacation information, the mobile telephone numbers of employees, and the "unpublished" direct dial telephone numbers of employees. ECF 19-7 at 2, 6, 7; ECF 19-9 at 5. The Enciso and Scofield Declarations both assert that the privacy interest of the affected employees outweighs the public's interest in the information. ECF 19-3 ¶¶ 27–29; ECF 19-8 ¶¶ 24–25. The Enciso Declaration also states that, due to the controversial nature of the Berlaimont project, release of individual contact information could lead to harassment of agency employees. ECF 19-3 ¶ 28. Wilderness Workshop, on the other hand, argues that the public has an interest in the withheld information because such "information can form a comprehensive picture of the interactions between and among the agency, project proponents, and others," and that the resulting comprehensive picture would help "citizens . . . know what their government is up to." ECF 21 at 25. Although that may sometimes be the case, here the Court can see no way in which the unpublished phone numbers of individual agency employees—let alone their leave information—could provide any such insight to the public or otherwise outweigh the privacy interests of those employees. Accordingly, the Court finds that the agencies rightly withheld those materials under Exemption 6.

**C.  The agencies produced the records in an appropriate format.**

There is no dispute that the materials the agencies disclosed were produced as searchable PDF files. Wilderness Workshop seeks a Court order directing Defendants to produce the files not only in the requested format, but also on a discrete electronic media such as a flash or jump drive. ECF 19-4 at 3. Although it is certainly true that, in general, "requesters may specify the preferred form or format (including electronic formats) for the records sought," 7 C.F.R. § 1.5(d), the Court finds no support for the proposition that a FOIA requester may specify not only the "form or format" of the records, but also the means by which they are transmitted. The Court is no more inclined to issue such an order here than it would be to specify that an agency must hand-deliver paper records instead of mailing them.

## IV.   CONCLUSION

The Court finds that Defendants properly withheld all the materials they withheld pursuant to Exemptions 5 and 6, except for those that were withheld exclusively pursuant to the deliberative process privilege. The Court further finds that Defendants disclosed the records in an appropriate format. Although the Court concludes that the OIA conducted an adequate search for records in its possession, the Court also finds that the Forest Service has not established that it conducted an adequate search because it has not described the process through which it identified the custodians whose records were searched or explained who those custodians were. Accordingly, Defendants' Motion for Summary Judgment is PARTIALLY GRANTED and PARTIALLY DENIED.

The Court orders Defendants to either disclose to Wilderness Workshop all records withheld under the deliberative process privilege or to provide revised declarations and Vaughn indices to better explain why the relevant communications were deliberative, and what specific harm would result from their release. The Court further orders the Forest Service to provide Plaintiffs with a supplemental declaration describing the process through which it selected the custodians whose records were searched, as well as information about the identities and/or roles

of those custodians. Finally, the Court instructs the parties to jointly file, within thirty days of this decision: (1) a status report that sets forth a list of the records that remain in dispute; and (2) a proposed schedule for further proceedings, including deadlines for the submission of any renewed dispositive motions, supplementary Vaughn indices, or supplementary declarations.

A separate order accompanies this opinion.

**SO ORDERED**.

Dated:  September 1, 2023

_____
Jia M. Cobb
U.S. District Court Judge